

FILED

MAY 1 4 2010

CLERK, US DISTRICT COURT
NORFOLK, VA

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA

-----------------------------------------------------------------------X

RALPH E. PRICE, on behalf of himself and all others
similarly situated,

Civil Action No. 2:10cv216

Plaintiff,

**CLASS ACTION**
**COMPLAINT**

v.

ROBERT GATES, SECRETARY OF DEFENSE,
in his individual and official capacities, THE UNITED
STATES DEPARTMENT OF DEFENSE, and
THE UNITED STATES OF AMERICA,

**JURY TRIAL DEMANDED**

Defendants.

-----------------------------------------------------------------------X

Plaintiff, Ralph Price, by his attorneys, as and for his First Amended Class Action

Complaint, alleges, with personal knowledge as to his own actions, and upon information and

belief as to those of others, as follows:

### Nature of this Case

1.      This action seeks payment of earned wages in the form of "performance payouts"

to employees who previously worked for the United States Department of Defense.

2.      This action is brought against the United States of America, the Department of

Defense ("DOD"), and Secretary of Defense Robert Gates in his individual and official

capacities.

3.      The National Security Personnel System ("NSPS"), a system within the DOD,

was created to replace the longevity-based pay grade system with a merit-based pay system for

civilian DOD employees.

4.      The performance-based wage payments are from a pool of money created at least in part through the designation by the Secretary of Defense of a percentage of all the civilian employees' annual pay increases. Thus, the contributions are made by the very employees who are eligible to receive the salary increases and bonuses. That same money is then paid out to employees in proportion to their performance.

5.      The NSPS pay system results in a distribution each year to employees of performance-based: (a) pay increases; and/or (b) "bonus" compensation. The amounts to be paid to employees depend on a rating of record assigned to each employee, based on performance and contribution.

6.      An employee's performance appraisal year is based on the government's fiscal year which begins on October 1st and ends September 30th (365 days). At the end of that fiscal year, the employees are each reviewed and rated, and a determination is made as to whether they are entitled to a salary increase and/or bonus or not; and if so, the number of shares of the performance-based pay pool they will receive.

7.      DOD has wrongfully denied compensation to departing employees who have contributed to and earned these performance-based bonuses on the basis of technical departure timing issues that do not find support in the regulations, the statutory authority for such regulations, or the United States Constitution.

8.      DOD has denied employees these payouts even if they leave work in January of the following year, 90+ days after the bonuses have been fully earned, and, even if, as in Plaintiff's case, they leave work just one day before the first day of the first pay period of the

2

following year. This arbitrary treatment of bonus payments to departing employees violates the letter and the spirit of the regulations.

9.     The federal regulations are silent as to the need for these employees to be present on the first day of the first pay period in January in order to receive the bonus compensation they earned as of September 30 of the previous year. The regulations provide that the <u>effective payout date</u> of an increase in <u>base salary</u> awarded under the NSPS system, "will be the first day of the first pay period beginning on or after January 1 of each year." 5 CFR 9901.342(g)(6). Thus, for a civilian DOD employee to receive an NSPS payout distribution consisting solely of an increase in base salary, naturally, that employee must still be working and continuing on the job on the designated NSPS salary increase payout date, which is the first day of the first full pay period of the next year. For example, the first day of the NSPS payout date for the 2007-2008 performance year was January, 4, 2009, which is the first day of the first full pay period of the next year (2009).

10.     On the other hand, the federal regulations contain no provision for an <u>effective date</u> of the <u>bonus</u> component of their performance payout. DOD has arbitrarily set the effective date of the bonus component of the performance payout to be more than three months after the appraisal period concludes.

11.     As a result, there are tens of thousands of DOD civilian employees who, after working the full NSPS performance period, and after contributing a large percentage of their performance based salary increase to the NSPS payout pool, leave DOD after the end of the government's fiscal year (September 30th of each year) but before the NSPS designated effective date for salary increases, which is always in the first week of January of the year following the

3

NSPS performance period, and, therefore, are barred from receiving their earned bonuses.

12.     This suit is brought on behalf of a nationwide class of all former DOD civilian employees who, during the period from January 1, 2003 to the present, earned but did not receive a performance bonus in an amount less than $10,000 because they retired, resigned or transferred out of the NSPS system after the end of fiscal years 2003-2009 (September 30th of each year) but before the early January designated effective payout date for performance-based salary increases. These employees were denied their bonuses despite the fact that they contributed a substantial percentage of their base salary increases into the NSPS pay pool fund and were favorably reviewed and awarded shares of the performance-based pay pool.

### Jurisdiction, Venue, and Waiver of Sovereign Immunity

13.     Jurisdiction in this civil action is authorized pursuant to 28 U.S.C. 28 § 1331, as the action arises under the laws of the United States; and because the claims asserted raise a substantial federal question.  Jurisdiction is also authorized pursuant to the Little Tucker Act, 28 U.S.C. § 1346, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

14.     Defendants have waived sovereign immunity under the Administrative Procedures Act (5 U.S.C. § 702), the Mandamus Statute (28 USC § 1361), the Back Pay Act (5 U.S.C. § 5596) and the Little Tucker Act (28 U.S.C. § 1346).

15.     Venue is proper in this district under 28 U.S.C. § 1391(e) because Defendant Gates is an officer of the United States and the Department of Defense, the Department of Defense is an agency of the United States, and Plaintiff resides in this District.

### Parties

16.     Plaintiff Ralph E. Price is a citizen and resident of the State of Virginia.  As a

4

former civilian, non-bargaining unit employee of DOD, Mr. Price was denied his earned bonus in 2009, although he worked the entire NSPS performance period for the 2007-2008 fiscal year and received an outstanding review and was awarded a bonus.

17.     Defendant Robert Gates is the United States Secretary of Defense, and, as such, exercises authority, direction and control over the DOD.  The Secretary ensures that supervisors and employees understand NSPS and function effectively within it.  Defendant Gates is being sued in his official and individual capacity.

18.     Defendant United States Department of Defense is a cabinet level agency of the Executive branch of the United States Government and introduced the NSPS system and codified NSPS Rules and Regulations in the Federal Register.

19.     Defendant United States of America is a sovereign nation existing under the Constitution of the United States of America.

## Operative Facts

### A.    The Implementation of NSPS

20.     The National Defense Authorization Act of Fiscal Year 2004, Pub. L. 108-136, 117 Stat. 139 (2003) ("the Act"), became law on November 24, 2003.  This statute provided the Secretary of Defense the authority to establish a flexible and contemporary civilian personnel system called the National Security Personnel System, or the NSPS, a human resources management system for DOD.

21.     The Act as passed in 2003 required the NSPS to include a "fair, credible and transparent employee performance appraisal system," "effective safeguards to ensure that the management of the system is fair and equitable and based on employee performance," and "a

5

pay-for-performance evaluation system to better link individual pay to performance, and provide an equitable method for appraising and compensating employees." The Act was later amended in 2008 to require that the regulations implementing the Act provide for a "fair, credible, and transparent system for linking employee bonuses…to performance appraisals of employees." 5 U.S.C. § 9902.

22.     The NSPS system is thus designed to provide performance-based pay and salary increases that allow employees to be paid and rewarded based on performance and results, rather than based solely on longevity, as had previously been the case. The system provides a pay-banding structure to replace the General Schedule, and should result in a distribution of available performance-based pay funds based upon individual performance, individual contribution, team or organizational performance, or a combination of those elements. The NSPS pay system uses a pay pool concept to manage, control and distribute performance-based pay increases and bonuses.

23.     In each NSPS performance year, (e.g., October 1st to September 30th of each year) every NSPS employee is given a rating of record between 1 and 5 (5 being the highest) and is awarded a number of shares by the NSPS pay panel. Those receiving a one or two rating receive no shares; a three rating receives one or two shares; a four rating gets three or four shares; and a five receives five or six shares. The performance payout is a function of the amount of money in the performance pay pool and the number of shares assigned to each individual employee.

24.     The rating of record used as the basis for a performance payout of increase in base salary and/or bonus, is the one assigned for the most recently completed appraisal period. Pay pools and pay pool oversight is established and managed each year in accordance with

implementing issuances published by the Secretary of Defense.  The Secretary determines a

percentage of each civil service employee's annual government-wide general pay increase to be

included in the pay pools and paid out as (i) a performance-based pay increase; (ii) a

performance-based bonus; or (iii) a combination of the two.[1]  For example, in 2008 the Secretary

of Defense exercised his authority to designate that 40% of the percent pay increase for DOD

NSPS civil personnel be reserved for the pay pool distribution fund.  The remaining 60% was

given to the employees as their annual pay increase.

25.     Stated differently, a percentage of each NSPS employee's annual cost of living

increase is used to fund the NSPS pay pool, along with any added funds allocated by Congress.

**B.     DOD Does Not Abide By Its Own Regulations Or The Statutory
         Authority Governing NSPS Performance-Based Bonuses**

26.     An employee's performance-based NSPS payout is calculated by multiplying the

employee's base salary as of the end of the NSPS performance period by the number of shares

earned by the employee times the share value.

27.     An NSPS performance payout may be an increase in base salary, a bonus or a

combination of the two.  When an employee's base salary is not increased because the

employee's base salary has reached the maximum of the pay band, any remaining performance

payout is paid as a bonus in lieu of the increase in base salary.

28.     Most importantly, the "effective date" of an NSPS payout is defined only in

relation to an NSPS payout based on an increase in base salary.  Title 5 CFR 9901.342(6)

provides that the effective date of the salary increase is the first pay period beginning on or after

January 1 of each year.  DOD, however, denies NSPS bonuses to employees where the

---

[1]      In addition to employee contributions from salary increases, Congress also allocates

employees leave DOD before the effective date of the payout of <u>base salary</u> increases.  The regulations do not support this interpretation.

29.     In fact, there is no basis in the regulations for DOD's arbitrary application of the January "effective date" to NSPS bonuses, which should be paid so long as the employee completes the fiscal (performance) year, regardless of the employee's departure date.

30.     To apply such an arbitrary date without due process is not "equitable," as required by the statutory authority, does not link performance to payment as to the employees who depart during the three month gap between the completion of the appraisal period and the informally and arbitrarily set "effective" date of bonuses, and does not comply with the due process rights of employees who have earned their performance payouts prior to leaving the employ of the federal government.

## C.     Plaintiff Was Denied His NSPS Performance Based Payout

31.     Plaintiff was a DOD civilian employee for 36 years, who retired in 2007 but was re-hired as a so-called "annuitant" for a finite, 2 year period, so he could continue some important work for DOD.  In the documentation requesting Plaintiff's re-employment, his superiors explained that Plaintiff was essentially indispensible to DOD.  In the DOD's own words:

> Mr. Price has more than 34 years working for USJFCOM.  His personal understanding and corporate knowledge of all the aspects of the USJFCOM IT enterprise and information security implementations cannot be replaced.  In addition to the traditional IT capabilities, we would like to point out that many of these networks and systems have highly specialized communications, computers, and information security requirements due to the complex nature of the work performed by the customers supported by these networks.  Mr. Price is the senior J6 member on the USJFCOM IT investmentboard, USJFCOM Industry

funds to the pay pool.

Technology Transfer board and Cooperative Research and Development
Agreement panel, all of which are significant organizations that prioritize
$33M in IT investments, advance insertion of industry knowledge-base, concepts,
and technology that best support the USJFCOM Commander's goals.

32.    Plaintiff left DOD permanently on January 3, 2009, exactly 2 years after the

extension of his employment as an annuitant. Under the written terms of his re-employment,

Plaintiff was not entitled to work on January 4, 2009 because his extended annuitant term

expired on January 3, 3009. The NSPS payout date for salary increases from the previous NSPS

performance period -- 2007-2008 -- was January 4, 2009, the first day of the first pay period of

the new year. Because Plaintiff had to leave work the prior day, and because DOD misinterprets

the regulations, and does not live up to its promise to safeguard uniform treatment of payment of

bonuses to departing employees who have earned them, Plaintiff was not awarded his NSPS

bonus, even though he worked the whole 365 days of the NSPS performance period -- and

earned his highest ever NSPS rating – a 4 of 5 -- and was awarded the greatest bonus amount of

his career from the NSPS pay pool panel.

33.    Plaintiff's payout distribution totaled $6,825 -- $2,048 in a base salary increase

and $4,777 in bonus -- for the 2007-2008 performance period. Plaintiff should have received his

NSPS performance-based bonus of $4,777, regardless of when he left DOD, as long as it was

after September 30, 2008.

**D.    Plaintiff Exhausted His Administrative Remedies**

34.    Plaintiff filed two requests for reconsideration to his Command's Pay Pool

Manager. Both requests for reconsideration were denied. Plaintiff then filed an appeal regarding

his two denied reconsideration requests to his Command's Deputy Commander, who is his

Command's NSPS Performance Review Authority ("PLA"). Plaintiff's appeal to the PLA was also denied.

35. Thus, Plaintiff has exhausted all his administrative remedies as a nonbargaining unit employee and has no option but to file the action to recover for himself and the class members their earned NSPS bonuses that DOD denied them though these employees worked the full NSPS performance period, were favorably reviewed and awarded bonuses, but were not paid them because they left prior to the designated effective date for NSPS base salary increases. Though it is natural and sensible for salary increases to be made payable at the beginning of the first pay period of the following year, as the regulations provide, there is no basis in the regulations or in common sense for the earned bonuses to be payable only if the employee remains on the job until the beginning of the first pay period of the following year. In misapplying the regulations in that manner, DOD is violating the statutory authority allowing the creation of the NSPS system, the Constitution of the United States, and the regulations themselves, and is unjustly enriching itself at the expense of the very employees who contributed money to fund the NSPS pay pool.

### Class Action Allegations

36. Plaintiff brings this action on his own behalf and additionally, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a nationwide class of all former DOD civilian employees who completed an appraisal period and who retired, resigned or transferred out of the NSPS system after the end of the appraisal period (September 30th of each year) but before the designated effective payout date for an increase in base salary, and were, on that basis, denied their earned NSPS bonuses, for the period from January 1, 2003, to the present

(the "Class").

37.     Excluded from the Class are Defendants; any parent, subsidiary, or affiliate of Defendants; any entity in which Defendants have or had a controlling interest, or which Defendants otherwise control or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendants.

38.     This action is brought as a class action for the following reasons:

    a.     The Class consists of thousands of persons and is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

    b.     There are questions of law or fact common to the Class that predominate over any questions affecting only individual members, including:

        i.     whether Defendants were required to pay Plaintiff and the Class their earned bonuses even if they departed prior to the first pay period in January of the year following their appraisal periods;

        ii.     whether Defendants violated the Fifth Amendment of the Constitution of the United States, applicable statutory authority, and applicable federal regulations by failing to do so;

    c.     The claims asserted by Plaintiff are typical of the claims of the members of the Class;

    d.     Plaintiff will fairly and adequately protect the interests of the Class, and Plaintiff has retained attorneys experienced in class and complex litigation;

    e.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

11

i.      Absent a class action, Class members as a practical matter will be unable to obtain redress, Defendants' violations of their legal obligations will continue without remedy, additional DOD NSPS employees will be harmed, and Defendants will continue to retain their ill-gotten gains;

ii.      It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

iii.      When the liability of Defendants has been adjudicated, the Court will be able to determine the claims of all members of the Class;

iv.      A class action will permit an orderly and expeditious administration of Class claims, foster economies of time, effort, and expense and ensure uniformity of decisions; and

v.      The lawsuit presents no difficulties that would impede its management by the Court as a class action.

f.      Defendants have acted on grounds generally applicable to Class members, making class-wide monetary and injunctive relief appropriate; and

g.      The prosecution of separate actions by individual members of the Class would create a risk of incompatible standards of conduct for Defendants and of inconsistent or varying adjudications for all parties.

## FIRST CAUSE OF ACTION

### Declaratory Relief/ Review Pursuant to Administrative Procedures Act

(Against Defendant Gates In his Individual and Official Capacities, the Department of Defense, and the United States of America)

12

39. Plaintiff incorporates the foregoing allegations by reference herein.

40. Pursuant to the Declaratory Judgment Act, Plaintiff and the Class seek declaratory relief regarding:

(a)     Whether Defendants are permitted under the plain language of the applicable federal regulations to refuse to pay the earned and vested "bonus" portions of the performance payouts to Plaintiff and to each member of the Class after they have completed the work earning such bonus portions;

(b)     Whether Defendants are permitted under the 5 U.S.C. § 9902 to refuse to pay the earned and vested "bonus" portions of the performance payouts to Plaintiff and to each member of the Class after they have completed the work earning such bonus portions;

(c)     Whether Defendants are permitted under the Fifth Amendment to refuse to pay the earned and vested "bonus" portions of the performance payouts to Plaintiff and to each member of the Class after they have completed the work earning such bonus portions.

(d)     Whether Defendants are permitted under federal regulations, which fail to set an "effective date" of the bonus portion of the performance payout, to arbitrarily select an "effective date" that strips Plaintiff and the Class of the bonus portions of their performance payouts after they have performed the work earning such bonus portions; or whether such action violates the United States Constitution, federal statutes, and/or federal regulations.

(e)     Whether the decision to refuse to pay performance-based bonuses for

13

work performed, after the work had already been performed, constitutes unjust

enrichment to the United States government and the Department of Defense.

41.    An actual controversy exists regarding the foregoing matters.  Defendants are

currently wrongfully withholding payments actually earned and due to Plaintiff and the Class,

and Plaintiff and each member of the Class are thereby damaged.

The aforesaid actual controversy relates to a matter with the federal court's subject matter

jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 2201, and 5 U.S.C. § 702 *et seq.*

WHEREFORE, Plaintiff prays for the relief set forth below

## SECOND CAUSE OF ACTION

### Mandamus

(Against Defendant Gates in his Official Capacity).

42.    Plaintiff incorporates the foregoing allegations by reference herein.

43.    The Mandamus Statute, 28 U.S.C. § 1361, provides: "The district courts shall

have original jurisdiction of any action in the nature of mandamus to compel an officer or

employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

44.    Defendant Gates in his official capacity owed Plaintiff and the Class a clear,

nondiscretionary duty to pay amounts due to them under the Performance-Based Pay provisions

of the Code of Federal Regulations, 5 CFR § 9901.342.

45.    The Federal Regulations state that the performance-based pay system applicable

to Plaintiff and the Class "will result in a distribution of available performance pay funds based

on individual performance, individual contribution, team or organizational performance, or a

combination of those elements."  5 CFR §9901.342(a).  "Performance shares" are required to be

14

used to determine bonuses. §9901.342(f). Defendant Gates wrongfully and in violation of the law failed to use Plaintiff's performance shares to determine his bonus. Instead, Defendant Gates <u>disregarded Plaintiff's performance shares</u> and refused to pay him amounts due to him.

46.     Defendant Gates also owed Plaintiff and the Class a clear, nondiscretionary duty to implement a compensation system that was fair and equitable, and based on employee performance, pursuant to 5 U.S.C. § 9902. The policy of refusing to pay employees their performance payouts, which they fully earned prior to their departure, is neither fair nor equitable, nor based on employee performance.

WHEREFORE, Plaintiff and the Class pray for the relief set forth below.

### THIRD CAUSE OF ACTION

### Back Pay Act (5 U.S.C. §5596)

(Against Defendant Gates in his Individual and Official Capacities, the Department of Defense, and the United States of America)

47.     The Back Pay Act provides in part that an employee of an agency who is found by appropriate authority under applicable law or regulations to have been affected by an unjustified or unwarranted personnel action which has resulted in the reduction of all or part of the pay, allowance, or differentials of the employee is entitled, on correction of the personnel action, to receive the amount he would have received absent the personnel action, attorneys' fees, and interest. 5 U.S.C.A. §5596(b).

48.     A ruling as to the First and Second Causes of Action in Plaintiff's favor will constitute a finding that Plaintiff and the Class have been affected by an unjustified or unwarranted personnel action.

15

49.     The decision to refuse to pay performance-based bonuses for work performed, after the work had already been performed, was an unjustified and unwarranted personnel action resulting in the reduction of pay, allowance or differentials to which Plaintiff and the Class are entitled.

WHEREFORE, Plaintiff prays for the relief set forth below.

## FOURTH CAUSE OF ACTION

### Violation of the Fifth Amendment

(Against Gates in his Individual and Official Capacities, the United States of America, and the Department of Defense)

50.     The Fifth Amendment of the United States Constitution prohibits the taking of property without due process of law.

51.     Defendants Gates in his Individual and Official Capacities, the United States of America, and the Department of Defense, refused payment for work completed by Plaintiff and the Class without due process, and specifically without a rational legislative purpose. Defendants failed to follow proper procedures to establish formal regulations withdrawing the rights of Plaintiff and the Class to their earned bonuses.

52.     Defendant Gates is hereby sued in his individual capacity pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for taking of Plaintiff and the Class' vested rights in property without due process in violation of the Fifth Amendment.  Defendant Gates is a federal official and acted under color of federal law in refusing to pay Plaintiff and the Class amounts owed to them.

53.     Plaintiff and the Class seek an injunction pursuant to the Administrative

16

Procedures Act requiring Defendants to pay amounts owed to Plaintiff and the Class, and seek

back pay owed pursuant to the Back Pay Act and the Little Tucker Act.

WHEREFORE, Plaintiff prays for the relief set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court certify this action as a class action and

appoint Plaintiff as class representative. Plaintiff further prays on behalf of himself and all

others similarly situated, for judgment as follows:

Under the First Cause of Action,

1.      That the Court declare the respective rights and duties of Plaintiff and the Class,

and Defendants, as to:

(a)      Whether Defendants are permitted under the plain language of the

applicable federal regulations to refuse to pay the earned and vested "bonus" portions of

the performance payouts to Plaintiff and to each member of the Class after they have

completed the work earning such bonus portions;

(b)      Whether Defendants are permitted under the 5 U.S.C. § 9902 to refuse to

pay the earned and vested "bonus" portions of the performance payouts to Plaintiff and to

each member of the Class after they have completed the work earning such bonus

portions;

(c)      Whether Defendants are permitted under the Fifth Amendment to refuse to

pay the earned and vested "bonus" portions of the performance payouts to Plaintiff and to

each member of the Class after they have completed the work earning such bonus

portions.

17

(d)     Whether Defendants are permitted under federal regulations, which fail to set an "effective date" of the bonus portion of the performance payout, to arbitrarily select an "effective date" that strips Plaintiff and the Class of the bonus portions of their performance payouts after they have performed the work earning such bonus portions; or whether such action violates the United States Constitution, federal statutes, and/or federal regulations.

(e)     Whether the decision to refuse to pay performance-based bonuses for work performed, after the work had already been performed, constitutes unjust enrichment to the United States government and the Department of Defense.

2.     For an order pursuant to 28 U.S.C. § 2202, 5 U.S.C. § 702 et seq., and other applicable laws, that Defendants to pay to Plaintiff and the Class the amounts owed to them.

3.     For an order that Plaintiff and the Class be awarded their costs.

4.     For such other and further relief as the Court deems just and proper.

Under the Second Cause of Action,

1.     For an order directing Defendant Gates to pay to Plaintiff and the Class amounts due to them in bonus payouts pursuant to 5 CFR §9901.342, based upon the performance shares they received or should have received, regardless of whether they were employed with the Department of Defense at the inception of the first pay period after January 1 of the year following the appraisal period.

2.     For an order that Plaintiff and the Class be awarded their costs.

3.     For such other and further relief as the Court deems just and proper.

Under the Third Cause of Action,

18

      1.      For an award of back pay in the amount of each bonus due to Plaintiff and each member of the Class.

      2.      For interest on amounts due.

      3.      For an order that Plaintiff and the Class be awarded their costs and attorneys' fees.

      4.      For such other and further relief as the Court deems just and proper.

Under the Fourth Cause of Action,

      1.      For an order directing Defendant Gates to pay to Plaintiff and the Class amounts due to them in bonus payouts pursuant to 5 CFR §9901.342, based upon the performance shares they received or should have received, regardless of whether they were employed with the Department of Defense at the inception of the first pay period after January 1 of the year following the appraisal period.

      2.      For an order that Plaintiff and the Class be awarded their costs.

3.    For such other and further relief as the Court deems just and proper.

Dated: May 14, 2010

Respectfully submitted,

Lisa A. Bertini (VSB #29660)
Hyojin Bae (VSB #76479)
BERTINI O'DONNELL & HAMMER, PC
999 Waterside Drive, Suite 1010
Norfolk, Virginia 23510
(757) 670-3868 Telephone
(757) 670-3865 Facsimile
lbertini@bohlaw.net
hbae@bohlaw.net

David J. Meiselman, Esq.
Jeffrey I. Carton, Esq.
Rebecca Coll, Esq.
Jerome Noll, Esq.
MEISELMAN, DENLEA, PACKMAN,
CARTON & EBERZ P.C.
1311 Mamaroneck Avenue
White Plains, New York 10605
(914) 517-5000

Attorneys for Plaintiff

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all issues so triable.


Dated: May 14, 2010

Respectfully submitted,

Lisa A. Bertini (VSB #29660)
Hyojin Bae (VSB #76479)
BERTINI O'DONNELL & HAMMER, PC
999 Waterside Drive, Suite 1010
Norfolk, Virginia 23510
(757) 670-3868 Telephone
(757) 670-3865 Facsimile
lbertini@bohlaw.net
hbae@bohlaw.net

David J. Meiselman, Esq.
Jeffrey I. Carton, Esq.
Rebecca Coll, Esq.
Jerome Noll, Esq.
MEISELMAN, DENLEA, PACKMAN,
CARTON & EBERZ P.C.
1311 Mamaroneck Avenue
White Plains, New York 10605
(914) 517-5000

Attorneys for Plaintiff

00226080.doc