UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

RALPH E. PRICE, on behalf of himself and
all others similarly situated,

        Plaintiffs,

              v.                         Civil Action No. 2:10-cv-216

ROBERT M. GATES, Secretary of Defense
in his individual and official capacities, the UNITED STATES
DEPARTMENT OF DEFENSE, and the UNITED
STATES OF AMERICA,

        Defendants.

DEFENDANTS' JOINT MEMORANDUM
IN SUPPORT OF THEIR MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT

## I.  INTRODUCTION

This action is the second suit plaintiff Ralph E. Price has brought in this Court against the

same defendants concerning the same subject matter.[1]  This purported class action challenges

defendants' method for paying bonuses under the National Security Personnel System (NSPS).

Plaintiff worked for the federal government, retired, and was rehired as a "reemployed

annuitant."  As a reemployed annuitant he, like many other Department of Defense (DoD)

employees, was covered under the new NSPS system.  Under this system, pay is linked to

performance.  The standard rating cycle is from October 1 - September 30 of the next year (the

---

[1]Plaintiff voluntarily dismissed his first action, Civil Action No. 2:10cv48, pursuant to
Fed.R.Civ.P. 41(a)(1)(A)(i) after defendants moved to dismiss the class action complaint.

same as the fiscal year).[2]   Personnel are then rated, and performance payouts, in the form of

increased base salary and/or bonus, are determined.  The rating of record is always January 1 of a

given year.[3]  Bonuses are a part of performance payouts but are not considered "pay" for any

purpose.  Applicable regulations, discussed in more detail below, provide that in order to receive

a performance payout, an employee must be in an NSPS covered position.  The payouts, by

regulation, occur the first pay period after January 1 of a given year.

Plaintiff left government service after the end of the rating cycle but before the first pay

period in January 2009.  As a result, he did not receive a bonus.  The challenge raised is that

defendants wrongfully denied "earned" bonuses to those employees who were no longer in NSPS

covered positions at the time of the performance payouts.  Plaintiff alleges that there are

thousands of former employees in this purported class.

Count I of the complaint seeks declaratory relief pursuant to the Declaratory Judgment

Act, 28 U.S.C. §2201.  Count II, brought under the Mandamus Act, 28 U.S.C. §1361, requests

that the Court order the Secretary of Defense to pay bonuses to plaintiff and his purported class.

Count III seeks the payment of bonuses pursuant to the Back Pay Act, 5 U.S.C. §5596.  Count IV

alleges a *Bivens* violation, claiming that the Secretary of Defense violated plaintiff's Fifth

Amendment rights by not paying him his bonus.

This action must be dismissed for want of jurisdiction pursuant to Federal Rule of Civil

Procedure 12(b)(1) and failure to state a claim pursuant to Rule 12(b)(6).  Plaintiff has failed to

---

[2]DoD Instruction 1400.25-M, Subchapter 1940, SC1940.AP2.2 (April 28, 2006) (Exhibit 1, p. 3); 5 C.F.R. §9901.411(a) (November 25, 2008).

[3]DoD 1400.25-M, Subchapter 1940, SC 1940.10.7.3 (Exhibit 1, p. 2) and 5 C.F.R. §9901.342(g)(6).

plead any money-mandating statute that would authorize payment in this case.  Indeed, pursuant

to federal law, a bonus is not "pay" as that term is defined, and statutes that authorize bonuses are

inherently discretionary.  The lack of a money-mandating statute requires that the action be

dismissed for lack of subject matter jurisdiction.  Similarly, the Declaratory Judgment Act

applies only if the Court has jurisdiction to otherwise hear the matter.  Because there is no

jurisdiction, there can be no declaratory relief.  The Mandamus Act does not apply to

discretionary matters, such as whether to pay a bonus.  Therefore, Count II must also be

dismissed.  The Back Pay act applies only for "pay," and only if there has been an unwarranted

personnel action.  Because that has not occurred, the Back Pay Act count must be dismissed.

Finally, a *Bivens* action applies only where a government employee, in his or her personal

capacity, has violated someone's constitutional rights.  This case is not even a close call.  Pay for

federal employees is set by statute and the Fifth Amendment is not implicated.

## II.  BACKGROUND

Congress passed the National Defense Authorization Act of 2004 on November 24,

2003.[4]  Title XI, Subchapter A of that Act created NSPS.  117 Stat. 1621-1633, codified at 5

U.S.C. §§9901- 9904.  Under this system, the Secretary of Defense was authorized, in regulations

prescribed jointly with the Office of Personnel Management (OPM), to create a human resources

management system "for some or all the organizational or functional units of the Department of

Defense." 5 U.S.C. § 9902(a).[5]  One component of this new system linked pay to performance.

---

[4]Pub. Law 108-136, 117 Stat. 1392 - 1826.

[5]The National Defense Authorization Act of 2010, Public Law 110-84 (October 28, 2009), terminated NSPS.  It provided that no non-covered organizational or functional units could be moved into NSPS and that all NSPS employees will be converted back to the personnel

5 U.S.C. §9902(b)(6)(I).  In addition, Congress directed the Secretary of Defense to confer with employee representatives in promulgating rules, and that the final rules would be implemented by the Secretary and the Director of OPM.  Because of this, the regulations were contained in both the Code of Federal Regulations and DoD issuances.  5 U.S.C. §9902(f) (2004).

NSPS represented a fundamental change in the way DoD employees were rated and compensated.  As delineated in notes accompanying the initial rules concerning NSPS:

> NSPS is designed to promote a performance culture in which the performance and contributions of the DoD civilian workforce are more fully recognized and rewarded.  The system offers the civilian workforce a contemporary pay-banding construct, which will include performance-based pay.  As the Department moves away from the General Schedule system, it will become more competitive in setting salaries and it will be able to adjust salaries based on various factors, including labor market conditions, performance, and changes in duties.

70 FR 6618 (November 1, 2005).[6]  These initial rules noted that the pay-for-performance aspect had not yet been implemented, but authorized the Secretary of Defense to issue implementing issuances that would establish a pay system.  5 C.F.R. §9901.311 (Jan. 1, 2006).  The CFR did, however, contain definitions.  A bonus was defined as: "an element of the performance payout that consists of a one-time lump-sum payment made to employees.  It is not part of basic pay."  5 C.F.R. §9901.304 (Jan 1, 2006).  Performance payout was defined as "the total monetary value of a performance pay increase and bonus provided under Sec. 9901.342."  *Id.*

The implementing issuances were contained in Department of Defense Instruction 1400.25-M and were effective on April 28, 2006.  The provisions covering performance-based

---

system that last applied to the employee (e.g., General Schedule) or to a personnel system that would have been applied had NSPS not been established no later than January 1, 2012.  NDAA of 2010 §1113(b) and (c), 123 Stat. 2498.

[6]The initial rules were contained, in part, in 5 C.F.R. Part 9901 (Jan 1, 2006).

pay were contained in Subchapter 1930.  Section 9.2 therein provides:

> The NSPS pay system is a pay-for-performance system designed to compensate and reward employees based upon individual and organizational performance and contribution.  The NSPS pay system uses a pay pool concept to manage, control, and distribute performance-based pay increases and bonuses.  The individual employee's performance payout is a function of pay pool funding, the total number of shares awarded within the pay pool for that appraisal period, the rating of record earned by that employee, the number of shares assigned to the individual employee and the base salary earned by the employee at the close of the appraisal period.

DoD 1400.25-M, Subchapter 1930.9.2 (Exhibit 2, p. 3).  Under NSPS, no individual employee

contributes money to the NSPS pay pool fund, to include bonuses.   Rather, as set out in the DoD

instruction, there are three elements to the pay pool fund: basic pay funds, funds remaining after

certain adjustments, such as for locality pay supplements, have been made, and funds spent for

performance-based cash awards (bonuses).  *Id.,* Subchapter 1930.9.3.1.[7]  (Exhibit 2, pp. 3-4).

    The effective date of the rating of record was January 1 of each year.  DoD 1400.25-M,

Subchapter 1940, SC 1940.10.7.3.  (Exhibit 1, p. 2).  The effective date of the performance-based

payouts was specifically stated in the instruction:

> Performance-based payouts shall be effective the first day of the first pay period beginning on or after January 1 of each year.  Performance-based payouts made from the pay pool funds shall consist of increases to base salaries, bonuses, or a combination of the two.

DoD 1400.25-M, Subchapter 1930.9.4.  (Exhibit 2, p. 4).  Finally, the Instruction provided that

an employee had to be in an NSPS covered position at the time of the payout in order to receive a

payout:

---

[7]*See also* 70 Fed. Reg. 29, p. 7560 (Feb. 14, 2005) which published the proposed NSPS rules.  The comments to the proposed rules stated that funding of a performance pay pool consists, in part, of money allocated for end-of-rating cycle performance awards or incentive awards.  Employees do not allocate this money, rather Congress does.

Performance-based payouts for employees who are no longer covered by NSPS. Employees who are no longer covered by NSPS at the time of the payout are not entitled to a performance-based payout.  However, such employees may be considered for incentive award action under Chapter 45 of [Title 5, US Code], if performance during the applicable period merits recognition.

*Id*., Subchapter 1930.9.4.5.  (Exhibit 2, p. 5).

The first payouts under the NSPS system occurred in January 2007.  These rules and regulations were in effect until new regulations, as discussed below, went into effect on November 25, 2008.  *See* 73 FR No. 188, p. 56344 (Sept. 26, 2008).

On January 28, 2008 Congress passed the National Defense Authorization Act of 2008. Public Law 110-181, 122 Stat. 349 (Jan. 28, 2008).  This Act amended, in part, 5 U.S.C. §9902. The amendments generally affected bargaining and disciplinary matters but did not affect the authority for performance based pay.  It did require, however, that the NSPS regulations be published in accordance with 5 U.S.C. §801 (major rule making).  NDAA 2008, Public Law 110-181 §1106(b)(1).[8]  Consequently, on May 22, 2008, defendants published proposed rules for NSPS in the Federal Register.  73 FR No. 73, pp. 29882-29927 (May 22, 2008).  Comments were received and the final rules were published in the Federal Register on September 26, 2008, and were effective on November 25, 2008.[9]

Under the new rules, the definitions of bonus and performance payout remain the same.  5 C.F.R. §9901.304.  Regarding the effective dates, the new regulation provides that the effective

---

[8]*See also* 73 FR No. 188, p. 56346.

[9]The final rules are now found at 5 C.F.R. Part 9901.  Thus, during the short life-span of NSPS, there were two sets of formal rules.  The first set were found in both 5 C.F.R. Part 9901 (January 1, 2006) and DoD 1400.25-M (April 28, 2006), and were effective until November 24, 2008.  The second set is contained in 5 C.F.R. Part 9901, effective November 25, 2008.

date of an increase in base salary will be the first pay period beginning on or after January 1 of

each year.  5 C.F.R §9901.342(g)(6).  The regulation further states:

> Unless otherwise specified in this section, employees who are no longer covered
> by NSPS on the effective date of the payout, or who moved out of NSPS on a
> permanent move after the end of their rating cycle but before the effective date of
> the payout, are not entitled to a performance-based payout.

*Id.* §9901.342(g)(7).[10]  In addition, the new rules provide that the rating period is October 1 -

September 30, and that the effective date of ratings of record will be January 1.  5 C.F.R.

§9901.411(a) and (c).  Finally, the rules provide that the basis for a performance payout is the

employee's most recent rating of record for the most recently completed rating cycle.  5 C.F.R

§9901.342(b).  Thus, under both sets of rules and regulations, in order to be entitled to a

performance payout (which may include a bonus) an employee has to be in an NSPS covered

position on the first pay period beginning on or after January 1 of the year.  Both the amount of

increase to salary and bonus are tied to the rating of record.  Neither are paid out until after the

rating of record.  Because the rating of record occurs on January 1, the payout has to occur the

first pay period after the rating.  While the wording between the initial rules and current rules

differs slightly, both sets of rules provide that the performance payout is tied to the rating of

record, that the payout occurs the first pay period on or after January 1, and that an employee

must be in an NSPS covered position in order to receive either portion of the performance payout

(increase in salary or bonus).

---

[10]In the comments section to the Federal Register, it was specifically noted that one
commentor suggested that employees who retire after the rating period but before the first pay
period after January 1 should receive a bonus.  The response noted that such employees are not
entitled to a bonus under the regulations, but may be considered for an incentive award under 5
U.S.C. chapter 45 if performance during the applicable period merits recommendation.  73 FR
No. 188, p. 56372 (September 26, 2008).

### III.  STANDARD OF REVIEW

A.      Rule 12(b)(1) – Lack of Subject Matter Jurisdiction Standard.

A 12(b)(1) motion focuses on the Court's power to hear a case.  There are two ways to raise this challenge.  The first simply avers that the complaint fails to allege facts upon which subject matter jurisdiction can be based.  The second challenges the jurisdictional allegations contained in the complaint as untrue.  *Kearns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009), *citing Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).  When a facial challenge to subject matter jurisdiction is raised, the court assumes, as it does with a 12(b)(6) motion,  the truthfulness of the facts alleged.  The motion will be denied if there are sufficient facts to invoke the Court's jurisdiction.  *Kearns*, 585 F.3d at 193.

B.      Rule 12(b)(6) – Failure to State a Claim.

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court will dismiss a claim if plaintiff's complaint fails to plead "enough facts to state a claim for relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (clarifying the standard from *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Because only the legal sufficiency of the complaint is in question, the Court assumes as true all facts that are alleged in the complaint along with the existence of any fact that can be proved, consistent with the allegations of the complaint.  *Eastern Shore Markets, Inc. v. J.D. Associates, et al.*, 213 F.3d 175, 180 (4th Cir. 2000).  However, while the Court takes the facts in the light most favorable to plaintiff, it need not have to accept the legal conclusions drawn from the facts nor any unwarranted inferences, unreasonable conclusions, or arguments.  *Id.  See also Giarratano v. Johnson, Director of the Virginia Department of Corrections*, 521 F.3d 298, 302

8

(4th Cir. 2008).

## IV.  ARGUMENT

Plaintiff purports to base jurisdiction upon 28 U.S.C. § 1346(a)(2), ("the Little Tucker Act"), but then fails to set forth any causes of action that rely upon the general waiver of sovereign immunity found in that Act.  Rather, plaintiff relies upon the Declaratory Judgment Act, the Mandamus Act, the Back Pay Act, and the *Bivens* doctrine in his quest for relief. Despite these four counts, in reading the complaint, it is quite clear that plaintiff is really raising two distinct matters.  First, he seeks a bonus to which he claims he is entitled under NSPS. Second, he seeks a determination that defendants arbitrarily determined that an employee must be in an NSPS covered position at the time of the performance payout to be entitled to a bonus. Implicit in this second argument but unstated by plaintiff is the plain fact that defendants adhered to the pertinent rules when plaintiff was denied a bonus because he was not in an NSPS covered position at the time of the payout.  This is because the first set of rules, in effect from April 28, 2006 until November 24, 2008, specifically stated: "Employees who are no longer covered by NSPS at the time of the payout are not entitled to a performance-based payout."  DoD 1400.25-M, Subchapter 1930.9.4.5 (April 28, 2006) (Exhibit 2, p. 5).  And, the second set of rules similarly provided: "Employees who are no longer covered by NSPS on the effective date of the payout, . . . are not entitled to a performance-based payout."  5 C.F.R. §9901.342(g)(7). Significantly, plaintiff does not challenge the rules via the Administrative Procedures Act.  The first matter is properly analyzed in the context of the Little Tucker Act.  The second may be analyzed under the guise of the Back Pay Act.

The Government makes a facial challenge to the Court's jurisdiction.  Specifically,

plaintiff has failed to plead any money-mandating statute upon which a waiver of sovereign immunity can be based.  Therefore, there is no jurisdiction to hear this case under the Little Tucker Act.  This defect also requires that the Declaratory Judgment Act claim be dismissed, because such a claim requires that the Court otherwise have jurisdiction.  Plaintiff's Mandamus action fails to state a claim because the statutes authorizing bonuses are discretionary, and therefore the Government cannot be compelled to pay them.  The Back Pay Act claim fails because plaintiff seeks a bonus and not "pay," and because defendants have abided by all relevant rules and have not committed an unwarranted personnel action.  Finally, plaintiff has failed to set out a *Bivens* claim.  Therefore, that count must also be dismissed.

A.      12(b)(1) – Lack of Subject Matter Jurisdiction.

1.      The DoD is Not A Proper Party Defendant.

In addition to the United States, plaintiff has named both the Secretary of Defense and the Department of Defense as defendants.  The DoD, as a federal agency, may not be sued in federal court unless Congress has specifically provided statutory authorization permitting it.  As the Supreme Court ruled in *Blackmar v. Guerre*, 342 U.S. 512, 515, 72 S.Ct. 410, 412 (1952): "When Congress authorizes one of its agencies to be sued *eo nomine*, it does so in explicit language, or impliedly because the agency is the offspring of such a suable entity.  *See Keifer & Keifer v. Reconstruction Finance Corp.*, 306 U.S. 381, 390, 59 S.Ct. 516, 518, 83 L.Ed. 784." Plaintiff here has not cited any waiver of sovereign immunity or any statute that permits suit against the DoD *eo nomine*.   Since Congress has not authorized in "explicit language" suit against the DoD under these circumstances, the Court lacks jurisdiction over it and should dismiss the DoD from this case.

2.      There Is No Money Mandating Statute That Would Entitle Plaintiff to Relief
        Under NSPS.

Plaintiff bases jurisdiction in this case, in part, upon the Little Tucker Act, 28 U.S.C.

1346(a)(2).[11]  While the Tucker Act is a waiver of sovereign immunity for money claims against

the United States not sounding in tort, it creates no substantive rights enforceable against the

United States.  Rather, plaintiff must point to either an express or implied contract with the

United States or some other money-mandating statute for the complaint to continue.  *U.S. v.*

*Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 945 (1976).  *See also  Brown, et al. v. United States*, 86

F.3d 1554, 1559 (Fed. Cir. 1996), *and Mills v. U.S. Postal Serv.*, 977 F.2d 116, 121, n. 6 (D.R.I.

1997).   In this action, because plaintiff, a federal employee, was appointed to his position, there

can be no contractual basis for his claim.  *See, e.g., Hamlet v. United States*, 63 F.3d 1097, 1101

(Fed. Cir. 1995), *cert. den.*, 517 U.S. 1155 (1996).  Therefore, his claim must be based upon a

money-mandating statute.  In *Fisher v. United States*, 402 F.3d 1167 (Fed. Cir. 2005), the Federal

Circuit held that the determination of whether a substantive law or statute is money-mandating is

jurisdictional.  Therefore, if the statute is not money-mandating, then the cause must be

dismissed for lack of jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).  *Id*. at 1173.

In determining if a statute is money-mandating, the underlying substantive law must fairly

be interpreted as mandating compensation by the Government for the damage sustained.  *Doe v.*

*United States*, 463 F.3d 1314, 1324 (Fed. Cir. 2006), *cert. den.*, 549 U.S. 1321 (2007), *citing*

*United States v. Mitchell*, 463 U.S. 206, 217 (1983).  This fair representation standard is met

_____

[11]Pursuant to 28 U.S.C. §1295(a)(2), appellate jurisdiction for Little Tucker Act claims lie
with the United States Court of Appeal for the Federal Circuit.  *See also Randall v. United
States*, 95 F.3d 339, 346 (4th Cir. 1996), *cert. den.*, 519 U.S. 1150 (1997).

when a statute is "reasonably amenable to the reading that it mandates a right of recovery in damages." *Doe*, 463 F.3d at 1324, *quoting United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472-73 (2003). Thus, there must be a fair inference that the statute is money mandating. 463 F.3d at 1324. A statute is not money mandating if it gives the Government complete discretion over the decision whether or not to pay. And, absent Congressional intent or other inferences that may rationally be drawn from the structure and purpose of the statute, it is presumed that the word "may" in a statute creates discretion. 463 F.3d at 1324, *citing McBryde v. United States*, 299 F.3d 1357, 1362 (Fed. Cir. 2002).

Under both the original and current NSPS rules, employees who leave NSPS covered positions before the first pay period closest to January 1 are not entitled to a performance payout, but may be considered for an incentive award actions under Chapter 45 of United States Code. The issue then is whether incentive awards statutes are money-mandating. The answer is no.

General pay statutes may serve as the basis for Tucker Act jurisdiction. *See In re United States*, 463 F.3d 1328, 1334 (Fed.Cir. 2006). *See also Mendoza v. United States*, 87 Fed. Cl. 331, 335-36 (2009)) (holding that 5 U.S.C. §5333 is money mandating). *See also Matsuo et al. v. United States*, 416 F.Supp. 2d 982, 990 (D. Haw. 2006). However, this case involves bonuses, not "pay." The statute that created NSPS simply stated that the Secretary would create a performance management system that incorporates "[a] pay for performance evaluation system to better link individual pay to performance, and provide an equitable method for appraising and compensating employees." 5 U.S.C. §9902(b)(6)(I). The details of this new system were set out initially in DoD 1400.25-M and 5 C.F.R. Part 9901, and after NDAA 2008, in revised 5 C.F.R. Part 9901. Thus, as noted above, two sets of rules have been used to implement NSPS.

Under both sets of rules, employees are rated pursuant to a rigorous rating process, and receive a performance payout.  A performance payout is "[t]he total monetary value of a performance pay increase and bonus ...."  DoD 1400.25-M, SC 1940.AP2.25 (April 28, 2006) (Exhibit 1, p. 5) and 5 C.F.R. §9901.304 (November 25, 2008).  Similarly, under both sets of rules, a bonus is specifically defined as not part of basic pay.  DoD 1400.15-M, SC 1940 AP2.5 (Exhibit 1, p. 3) and 5 C.F.R. §9901.304.  Under the first set of rules, the rules specifically stated that an employee must be in an NSPS covered position to be entitled to a performance payout. The rule also stated that employees no longer in NSPS covered positions may be considered for incentive award actions under Chapter 45 of 5 United States Code.  DoD 1400.25-M, SC1930.9.4.5.  (Exhibit 2, p. 5).  Under the second set of rules, an employee must be in an NSPS covered position to receive a performance payout.  5 C.F.R. §9901.342(g)(7).  Plaintiff is correct that the rule states that the effective date of an increase to base salary will be the first pay period on or after January 1 of each year.  5 C.F.R. §9901.342(g)(6).  However, plaintiff is simply incorrect in his assertion that defendant "arbitrarily set the effective date of the bonus component of the performance payout to be more than three months after the appraisal period concludes." Compl., ¶ 10.  Rather, the rules specifically state that an employee not in an NSPS covered position the effective date of the performance payout is not entitled to a performance-based payout.  5 C.F.R. §9901.342(g)(7).   As noted above, the performance payout is both increase to base salary and bonus.  Thus, if the base salary increase occurs the first pay period after January 1, then by necessity that is when the bonus portion will also be paid out.  Similarly, the new rules provide that the effective date of the rating of record is January 1.  5 C.F.R. §9901.411(c). Because this is a pay for performance system, and the performance payout is tied directly to the

rating of record, the bonus could not possibly be paid out until after the rating of record becomes effective.[12]  Finally, it bears mention that, in the response to public comments, it was noted that employees no longer in NSPS covered positions *may* be entitled to an incentive award under Chapter 45 of 5 United States Code – just as the original rules provided.  Hence, individuals in plaintiff's position were not foreclosed from receiving bonus payments.  With this background, inasmuch as the bonus payment regimen under 5 C.F.R. §9901 by its terms is not money-mandating, and thus does not provide plaintiff a jurisdictional basis for his claim, the issue is whether the incentive awards program under Chapter 45 is money-mandating.

Statutes that authorize awards are traditionally found not to be money mandating because they are discretionary.  In *Rosano v. United States*, 9 Cl. Ct. 137 (1985), *aff'd.* 800 F.2d 1126 (Fed. Cir. 1986), *cert. den.*, 480 U.S. 907 (1987), the Claims Court held that 5 U.S.C. §4503, which provides that the head of an agency "may pay a cash award"  for suggestions or special acts related to an employee's employment, is "wholly discretionary ... and lacks the 'money mandating' provision required for Tucker Act jurisdiction."  9 Cl. Ct. at 144-45.  *See also Anderson v. United States,* 73 Fed. Cl. 199 (2006) (same).  In *Adair v. United States*, 227 Cl. Ct.. 345, 648 F.2d 1318 (Ct. Cl. 1981), the court held that variable incentive pay under 37 U.S.C. §313 is discretionary, and therefore not money mandating.   In *Contreras v. United States*, 64 Fed. Cl. 583 (2005), *aff'd*, 168 Fed. Appx. 938 (Fed. Cir. 2006), the court likened the foreign language pay awards under 5 U.S.C. §4523 to the incentive awards program, and held that the statute was not money mandating.

---

[12]*See* 5 C.F.R. §9901.342(a)(2) which provides that the performance payout is based upon the rating of record.

The NSPS regulations provide that employees no longer in NSPS covered positions may be considered for incentive awards under Chapter 45 of 5 United States Code.[13]   Each of these statutory provisions, however, provides that the employee "may" be paid a cash award.   For example, under "Agency Awards" the statute provides: "The head of an agency *may* pay a cash award to ... an employee ...."  5 U.S.C. §4503.   Under "Presidential Awards," the statute reads: "the President *may* pay a cash award to ... an employee ...."   5 U.S.C. §4504.   And, under "Performance-based cash awards," the statute reads: "An employee whose most recent performance rating was at the fully successful level or higher ... *may* be paid a cash award under this section."  5 U.S.C. §4505a(a)(1).   There is no requirement that an award be paid.   Therefore, whether to grant an award is discretionary on the part of the Government.   Indeed, in *Rosano, supra,* the Court of Federal Claims specifically held that "Agency Awards" are discretionary.

Likewise, chapter 45 of 5 United States Code authorizes the OPM to prescribe regulations and instructions to carry out agency awards programs.  5 U.S.C. §4506.   These OPM regulations, contained in 5 C.F.R. Part 451, also use discretionary language.   For example, 5 C.F.R. §451.104 states that an agency "may grant a cash, honorary, or informal recognition award ... consistent with chapter 45 of title 5 ...."  *Id.*.   Thus, whether viewed via the statutory authorization or the C.F.R. regulations, any bonus that an employee no longer covered by NSPS could receive is wholly discretionary.   Therefore, there is no money mandating statute requiring the payment of bonuses under Chapter 45 of 5 United States Code.   Consequently, the Court lacks jurisdiction

---

[13]Specifically, 5 U.S.C. §§4501-4523.  NSPS did not alter in any way the awards statutes. In fact, the rules state that the third element of the pay pool fund "represents funds spent for performance-based cash awards."  DoD 1400.25-M, SC 1930.9.3.1.3.  (Exhibit 2, p. 4).  Under the new rules, this provision is contained in DoD 1400.25-M, SC 1930.9.2.1.3 (December 1, 2008).  (Exhibit 3, p. 3).  Performance based cash awards are spelled out in 5 U.S.C. §4505a.

over this claim and this action must be dismissed. *Fisher v. United States*, 402 F.3d 1167 (Fed. Cir. 2005).

3.    The Declaratory Judgment Act Is Inapplicable Because the Court Has No Jurisdiction.

Count I of plaintiff's complaint seeks declaratory judgment pursuant to the Administrative Procedures Act and the Declaratory Judgment Act, 28 U.S.C. §2201.  However, the Declaratory Judgment Act creates no substantive rights.  Rather, it creates a procedure for adjudicating existing rights. *Dwyer v. First National Bank*, 414 B.R. 92, 99 (S.D.W.Va. 2009), *citing Coomes v. Adkinson*, 414 F. Supp 975, 984 (D.S.D. 1976).  In *Terminal Freight Handling v. Ceylon*, 444 F.2d 699 (8th Cir. 1971), cited by the *Coomes* Court, the Court held that "the federal Declaratory Judgment Act ... does not confer jurisdiction, but rather provides an additional remedy where jurisdiction already exists." *Id*. at 703, *citing Shelly Oil Co. v. Phillips Petroleum Co.*, 339 US. 667, 671-72 (1950); *see also Brewster v. Brennan*, 567 F. Supp. 2d 791, 797 (D. Md. 2008) ("The Declaratory Judgment Act is a procedural statute that creates no substantive right.").  The statute itself provides that there must be "an actual controversy within [the court's] jurisdiction ...."  28 U.S.C. §2201.

Thus, as the statute and case law establish, if the court has no jurisdiction to hear the underlying action, then the Declaratory Judgment Act cannot be used to declare the rights of the party seeking relief.  That is the case herein.  The waiver of sovereign immunity found in the Little Tucker Act, in itself, creates no substantive right.  Rather, some other basis, either contractual or statutory, must provide the underlying substantive right to recovery.  Lacking that basis, the Court has no jurisdiction to entertain the claim.   In the present action, because there is

no money-mandating statue authorizing recovery, plaintiff's request for declaratory relief must be denied.

B.      Rule 12(b)(6).

1.      Plaintiff Fails to Meet the Standard for a Writ of Mandamus.

The remedy of mandamus is drastic and is only to be invoked in extraordinary situations. *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980) (per curiam).  The Fourth Circuit requires that the party requesting mandamus satisfy each element of its rigorous standard.  These are: (1) that the plaintiff have a clear and indisputable right to the relief sought; (2) that the responding party has a clear duty to perform the specific act requested; (3) that the act requested is in an official act or duty; (4) that there are no other adequate means to attain the desired relief; and (5) that the issuance of the writ will effect right and justice in the circumstances.  *In re: Daniel Braxton*, 258 F.3d 250, 260 (4th Cir. 2001).  When the relief sought is against a public official, "the alleged duty to act [must involve] a mandatory or ministerial obligation which is so plainly prescribed as to be free of doubt." *In Re: First Federal Savings and Loan Ass'n of Durham v. Baker*, 860 F.2d 135, 138 (4th Cir. 1988); *Estate of Michael by Michael v. Lullo*, 173 F.3d 503, 513 (4th Cir. 1999).

Plaintiff herein cannot satisfy his burden and, therefore, the request for a writ of mandamus pursuant to 28 U.S.C. §1361 must be dismissed.  At a minimum, plaintiff's complaint fails to satisfy the first two prongs of this rigorous test.  Under the NSPS rules, an employee who is not in an NSPS covered position is not eligible for a performance payout, to include a bonus, but may be considered for awards pursuant to Chapter 45 of 5 United States Code.  However, as discussed above, there is no right to an award, nor is there a requirement that an official give

17

someone an award, since the awards statutes are completely discretionary.  Necessarily, whether

to give someone an award is not a mandatory or a ministerial obligation.  Therefore, plaintiff has

failed to state a claim under the Fourth Circuit's mandamus rubric which would support the

request for extraordinary mandamus relief.  Plaintiff also fails the fourth prong since he has an

alternative means of obtaining the relief he seeks.  What plaintiff is really asking this Court to do

is to find that the final NSPS rules are arbitrary.  Plaintiff could seek this relief (albeit without

any monetary relief), via the Administrative Procedures Act.  That Act authorizes review of final

agency actions.  5 U.S.C. §704.  Plaintiff, however, has not pursued such relief in this First

Amended Class Action Complaint.  Because plaintiff has not satisfied each mandamus element,

this cause of action must be dismissed.

      2.      Plaintiff Cannot Make Out a Claim Under the Back Pay Act.

      The Back Pay Act provides, in part:

> (b)(1)  An employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule or regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances or differentials of the employee–
>     (A)  is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect -
>         (i)  an amount equal to all or any part of the pay, allowances, or differentials ... which the employee normally would have earned or received during the period if the personnel action had not occurred ....;

5 U.S.C. §5596.  The key is that the unjustified or unwarranted personnel action had to have

affected pay, an allowance or a differential to which the employee is entitled.  Inasmuch as a

bonus does not fall into any of these categories, and because there was no unjustified or

unwarranted personnel action, the Back Pay Act does not apply.

a.      Pay.

Basic Pay is defined as the total amount of pay received at a rate fixed by law or administrative action for the position held by the employee.  5 C.F.R. §530.202.  As discussed above, a bonus is discretionary and is not set at a rate fixed by law.  Under the NSPS rules that were created, a bonus was specifically defined as not being part of basic pay for any purposes. DoD 1400.25-M, SC1940.AP2.5 (April 28, 2006) (Exhibit 1, p. 3), and 5 C.F.R. §9901.304 (November 25, 2008).  With respect to performance-based cash awards, that statute specifically states that "[a] cash award under this section ... may not be considered to be part of the basic pay of an employee."  5 U.S.C. §4505a(b)(1).[14]

Moreover, plaintiff concedes that a bonus is not part of basic pay.  In paragraphs 9 and 10 of the complaint, plaintiff acknowledges the difference between basic pay and bonus and does not attempt to conflate the two.  Indeed, plaintiff's claim relies, in part, upon a bonus not being part of basic pay, because he implicitly acknowledges that base pay increases are properly payable only in the first pay period following January 1.  Thus it is plain from both a statutory and regulatory standpoint and plaintiff's theory of this case that a bonus is not part of basic pay.

b.      Allowances.

There are any number of allowances to which federal employees may be entitled.  They are statutorily created and then administered by the Office of Personnel Management (OPM). OPM publishes the rules in the Code of Federal Regulations.  For example, 5 C.F.R. Part 591 is entitled "Allowances and Post Differentials."   Allowances listed include uniform allowances,

---

[14]*See also Bivings v. Merit Systems Protection Board*, 301 Fed. Appx. 972 (Fed. Cir. 2008) which provides that a bonus is not part of base pay.

cost of living allowances,  allowances for duty at a remote worksite, and allowance for duty at

Johnston Island.  Of particular import, the payment of these allowances is not discretionary.

Thus, for example, for uniforms, the C.F.R. provides that:

> Unless a higher ... allowance rate is payable ... to an employee who is required by
> statute, regulation, or an agency's written administrative procedures to wear a
> uniform, the head of each agency concerned, out of funds available, shall –
> (a) Pay an allowance for a uniform not to exceed $400 a year ....

5 C.F.R. §591.103.  Regarding cost of living allowances, the C.F.R. states that the Government

does pay such allowances, not that they *may* pay such allowances.  *See, e.g.,* 5 C.F.R. §591.202.

With remote worksites, the C.F.R. states that "An allowance rate *shall* be established for each

post of duty determined to be remote ... and shall be terminated or adjusted as warranted."  5

C.F.R. §591.305 (emphasis added).  For employees assigned to Johnston's Island, "the annual

rate of the separate maintenance allowance paid to the employee *shall* be determined by the

number of individuals, including a spouse ... or one or more other family members, that are

maintained at a location other than Johnston Island."  5 C.F.R. §591.403(a)(emphasis added).  A

discretionary bonus simply does not find its way into the definition or ambit of an allowance.

     c.     Differentials.

Like allowances, differentials are statutorily created, with OPM given the authority to

create implementing regulations.  The most common are differentials for working a night shift

and environmental differentials for prevailing rate (wage grade) employees.  Again, these

differentials are mandatory provided the employee meets the condition for them.  For example,

the regulation reads that "[e]mployees shall be entitled to receive night shift differentials in

accordance with section 5343 of title 5, United States Code."  5 C.F.R. §532.505(a).  Similarly,

prevailing rate employees "shall be paid an environmental differential when exposed to a working condition or hazard that falls within one of the categories approved by [OPM]."  5 C.F.R. §532.511(a).  Moreover, a differential, when warranted, is part of an employee's basic pay. 5 C.F.R. §532.511(c).[15]  Again, a bonus does not fit the definition of a differential.

       d.       Unjustified or Unwarranted Personnel Action.

Even if a bonus fell within the ambit of the Back Pay Act, as pled in this matter, plaintiff still has failed to state a claim because defendants have not committed an unjustified or unwarranted personnel action.  As discussed in Section II above, the National Defense Authorization Act of 2003 authorized NSPS and authorized defendants and OPM to create regulations that would implement it.  Regarding pay, the statute provided that the new system would create a pay-for-performance evaluation system to better link individual pay to performance.  5 U.S.C. §9902(b)(6)(I).

In order to design and implement NSPS, the Secretary of the Navy, Gordon R. England, was appointed as the NSPS Senior Executive.  He established a Program Executive Office (PEO) and an integrated executive management team, comprised of senior DoD and OPM leaders, to advise the PEO and develop NSPS.  It took approximately one year (during which time defendant engaged in extensive discussions with labor organizations, employees and managers) after NSPS

---

[15] 5 U.S.C. §5755 does authorize supervisory differentials for General Schedule supervisors who supervise non-GS employees if the subordinate, absent a differential, would receive more pay than the supervisor.  In that situation, the differential is statutorily defined as not being part of basic pay of the supervisor.  However, that situation is not present in the instant case.

21

was authorized for defendant to publish the initial rules in the C.F.R.[16]  Approximately six

months later, defendants issued implementing instructions.  Under the applicable rules and

instructions, performance-based payouts, to include bonuses, occurred on the first pay period

after January 1 of the year.  DOD 1400.25-M, Subchapter 1930.9.4 (April 28, 2006) (Exhibit 2,

p. 4).  Employees had to be in an NSPS position in order to receive a performance-based payout

(to include a bonus).  *Id.,* Subchapter 1930.9.4.5.  (Exhibit 2, p. 5).  Moreover, the implementing

regulations specifically stated that employees who are no longer covered by NSPS at the time of

the payout and not eligible for a payout could be considered for an incentive award under 5

U.S.C. Chapter 45.  *Id.*

    After the 2008 statutory amendments to NSPS, defendants followed major rule making

procedures and issued new rules effective November 25, 2008.  73 FR No 188, p. 56344

(September 26, 2008).  While the new rules made changes to NSPS pay administration, they did

not significantly impact regulations governing performance payouts.   As under the old rules, the

rating cycle is October 1 - September 30, (5 C.F.R. §9901.411(a));  the definition of a

performance payout means the total monetary value of a performance pay increase and bonus;

and a bonus is still defined as an element of the performance payout, but is not considered part of

basic pay.  5 C.F.R. §9901.304.  The new rules still maintain the rigorous rating and pay policy.

Bonuses are still an integral part of the performance payout, and remain intertwined with

increases to base pay.   Under the new rules, an employee's rating of record is effective January

1.  5 C.F.R. §9901.411(c).  Necessarily, as under the old rules, base-pay increases are still

---

[16]The rules and extensive discussion of the PEO and discussions with labor organizations,
managers and employees, are set out in 70 FR No. 210 (Nov. 1, 2005).  Proposed rules were
published in 70 FR No. 29 (Feb. 14, 2005).

effective the first pay period after January 1 of the year.  And, in order to receive a performance

payout, an employee must be in an NSPS covered position at the time of the payout.  While the

new rule does not specifically state the effective date of a bonus, inasmuch as bonuses and pay

increases occur at the same time due to the interrelatedness of the two as part of the performance

payout, and because the performance payout cannot be paid until there is a rating of record,

bonuses are also paid the first pay period after January 1 of the year.

       In order for plaintiff to present a viable claim in this matter, he must plead facts alleging

that defendants violated either the statute or the implementing regulations.  He has failed to meet

this burden.  While the statute is silent on this issue, the regulations from the inception of NSPS

have provided that in order to receive a bonus, which is part of a performance payout, the

employee must be in an NSPS covered position on the effective date of the payout, which occurs

the first pay period after January 1 of a given year.

       Plaintiff avers that because the new regulations do not specifically state that a bonus will

be paid out the first pay period after January 1, defendant is not abiding by its regulations.

Compl., ¶ 28, 29.  This contention ignores the fact that the performance payouts occur as a single

product of the NSPS rating.  The bonus is an integral part of the NSPS performance payout.  It

also ignores that for the first two years of NSPS payouts, the instruction specifically included

language which stated that the bonus portion of the NSPS payout would occur the first pay period

after January 1 of a given year.  Importantly, under the new regulations, the procedure did not

change.  The regulations specifically provide that in order to receive an increase in base salary, an

employee has to be in an NSPS covered position the effective day of the payout.  Moreover,

payment of both an increase to base salary and bonus are triggered by the rating of record, which

still occurs on January 1.  This means that neither can be paid out until the first pay period on or after that date.

Plaintiff's complaint is not plausible on its face.  There were no challenges to DoD's performance-based pay rules via the Administrative Procedures Act, nor does this case directly challenge the Government's rule-making via the APA.  Indeed, no challenge was ever raised to the first set of rules implementing the pay portion of NSPS.  Defendants collaborated extensively with labor organizations and other concerned parties before implementing the rules.  Nothing pled herein would allow the Court to conclude the defendants have violated any statute, regulation, or rule with respect to the payment of bonuses, or that defendants acted arbitrarily when they implemented the rules.  In short, defendants have followed the rules.  Therefore, this complaint must be dismissed.

Finally, contrary to plaintiff's erroneous contention, federal employees do not contribute part of their pay for pay increases.  In paragraph 4 of the complaint, plaintiff states, in part, that employees covered by NSPS pay their own money into a fund for bonuses, suggesting that the failure to pay these bonuses violates the NSPS guidelines.  This assertion is simply not valid, and the Court need not accept it as true.  No employee contributes a portion of his or her pay to the NSPS bonus fund.  In the broadest scheme, federal pay is a result of moneys appropriated by Congress each year, which is why most federal employees are "appropriated fund" employees.  Funding for pay and bonuses for Department of Defense employees is contained, each year, in the Department of Defense Appropriations Act.  More specifically, pay and bonus money comes from the Operation and Maintenance Funding portion of the annual appropriations bill.

Plaintiff's suggestion that the bonus fund comes from bonuses earned by employees puts

24

the cart before the horse.  Rather, part of the NSPS funding comes from operation and

maintenance money (which fund pay and bonuses).  Bonuses that employees may then receive

come from the totality of the funds made available each year by Congress and not the other way

around.  Nothing in the complaint seriously challenges the funding scheme created under the

NSPS statute and implementing regulations.  Therefore, plaintiff has failed to state a claim upon

which relief can be granted.

      3.      Plaintiff's *Bivens* Claim is Without Merit.

The Supreme Court has recognized actions for violations of constitutional rights against

federal officials sued in their individual capacities.  *Bivens v. Six Unknown Agents*, 403 U.S. 388

(1971).  However, those actions are limited, and may not be brought against defendant Secretary

Gates in the manner sought by plaintiff here.  *Randall v. United States*, 95 F.3d 339, 345 (4th Cir.

1996) ("Any remedy under *Bivens* is against federal officials individually, not the federal

government.").  *Bivens* will not support an action against a federal official sued in his official

capacity.  *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991); *Daly-Murphy v. Winston*, 837 F.2d

348, 355 (9th Cir. 1987); *Randall*, *supra*.  Furthermore, such federal officials are only liable for

their own acts, not those of other individuals.  *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001)

("In a *Bivens* suit, there is no *respondeat superior* liability ... (citation omitted).  Instead, liability

is personal, based upon each defendant's own constitutional violations.").

    In the first instance, plaintiff has failed to allege sufficient facts implicating any personal

conduct on the part of Secretary Gates, despite his contention that the Secretary is "sued in his

individual capacity . . ."  Compl. ¶ 52.  Under the heightened pleading standard of *Ashcroft v.*

*Iqbal*, 129 S.Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to

survive a motion to dismiss a plaintiff must allege sufficient factual content that, accepted as true, allows the court to draw a reasonable inference that defendant is liable to the plaintiff for the misconduct alleged.  The complaint herein simply fails to allege any personal conduct on the part of Secretary Gates to deprive plaintiff Price of a bonus.  Hence, the complaint lacks the facial plausibility demanded by *Iqbal* and *Twombly*.

In addition, the complaint fails to state a cognizable *Bivens* claim because the courts have not recognized such a claim in the context of the Fifth Amendment's proscription against taking without just compensation.  Outside the realm of an infringement of Fourth Amendment rights, a *Bivens* remedy has only been found available for violations of the Fifth Amendment's due process clause in the context of employment discrimination, *Wilkie v. Robbins*, 551 U.S. 537, 549-50, 127 S. Ct. 2588, 2597 (2007), *citing Davis v. Passman*, 442 U.S. 228, 99 S. Ct. 2264 (1979) (employment discrimination); and for violations of the Eighth Amendment's proscription against cruel and unusual punishment.  *Carlson v. Green*, 446 U.S. 14, 100 S. Ct. 1468 (1980) (prison officials).

The Fourth Circuit set forth a three-part test, based upon Supreme Court precedent, regarding the extension of *Bivens* beyond the categories of employment discrimination and cruel and unusual punishment.  Specifically, for a *Bivens* remedy to be available, a court must determine that (1) Congress has not already provided an exclusive statutory remedy; (2) there are no "special factors counseling hesitation in the absence of affirmative action by Congress"; and (3) there is no "explicit congressional declaration" that money damages not be awarded. ....  Moreover, courts have noted that "the 'special factors' concept 'includes an appropriate judicial deference to indications that congressional inaction has not been inadvertent." *Judicial Watch*,

26

*Inc. v. Rossotti et al.*, 317 F.3d 401, 410 (4ᵗʰ Cir.), *cert. den.*, 540 U.S.825, 124 S. Ct. 179 (2003),

*quoting Hall v. Clinton,* 235 F.3d 202, 204 (4ᵗʰ Cir. 2000).

 Extending *Bivens* herein would not be proper because the facts pled do not establish a

violation of the Fifth Amendment.   The seminal case in this area is *Adams v. United States*, 391

F.3d 1212 (Fed. Cir. 2004), *cert. den*, 546 U.S. 811, 126 S. Ct. 330 (2005).   The plaintiffs therein

were some 14,000 law enforcement officers who challenged amendments to the Fair Labor

Standards Act (FLSA).   These amendments limited to two years (or three for wilful violations)

the amount of back pay that could be awarded for a violation of the FLSA.   Prior to the

amendments, one alleging violations to the FLSA could seek back pay for six years.   Plaintiffs

sued, alleging that because they had worked the overtime, they had earned it, and the FLSA

amendments deprived them of vested property rights without due process of law.

 The Court of Appeals, affirming the Court of Federal Claims, disagreed.   It began by

noting that federal employees serve by appointment and not contract, and that the terms of their

compensation are governed exclusively by statute and regulations.   391 F.3d at 1221, *quoting*

*Kizas v. United States*, 707 F.2d 524, 535 (D.C. Cir. 1983).   The Court then concluded that in the

context of federal employee compensation and benefit entitlement statutes, the right to be paid

money is not a property interest for purposes of the Takings Clause of the Fifth Amendment.   391

F.3d at 1225.   *See also Williams v. United States*, 86 Fed.Cl. 594, 605-606 (Fed. Cl. 2009)(claim

for entitlement to accrued annual leave is not a cognizable property interest under the Takings

Clause).   The same applies herein.   Whether a federal employee receives a bonus or not is a result

of the statutes that authorize NSPS and the awards system.   The receipt or non-receipt of a bonus

is not a property right for purposes of the Fifth Amendment.   Plaintiff cannot succeed on his Fifth

Amendment claim because whether to pay a bonus or not is not a vested property right for constitutional purposes, and expanding *Bivens* to incorporate such a right is without jurisprudential support.[17]

## V.  CONCLUSION

Plaintiff has failed to plead a money-mandating statute which would support an exercise of jurisdiction.  Moreover, statutes that authorize awards are discretionary.  Therefore, plaintiff's Little Tucker Act action must be dismissed for lack of jurisdiction.  Similarly, because the Declaratory Judgment Act is dependent upon the Court having jurisdiction; there being none, that claim must be dismissed.  Mandamus applies only to non-discretionary actions.  Because the statutes that authorize bonuses are discretionary, there can be no Mandamus.  The Back Pay Act is not applicable, not only because there was no unwarranted personnel action, but more importantly because a bonus does not fall within the ambit of that Act.  Finally, plaintiff has failed to articulate sufficient conduct on the part of Secretary Gates to subject him to liability under *Bivens*, and his claim under the pay statutes does not implicate a property right under the Takings Clause of the Fifth Amendment.  Therefore, plaintiff's *Bivens* claim also must be dismissed.

---

[17]Were the court to declare that the Fifth Amendment's Takings Clause did support a *Bivens* claim, then Secretary Gates should be entitled to qualified immunity on the grounds that such a constitutional right was not "clearly defined" at the time.  *See, e.g., Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).

NEIL H. MACBRIDE
UNITED STATES ATTORNEY


By:       /s/
               Lawrence R. Leonard
               Managing Assistant United States Attorney
               Virginia State Bar No. 37995
               Attorney for Defendants
               United States Attorney's Office
               101 West Main Street, Suite 8000
               Telephone - 757 - 441 - 6331
               Facsimile - 757 - 441 - 6689
               E-Mail - lawrence.leonard@usdoj.gov


OF COUNSEL:
JOHN D. NOEL
Senior Trial Attorney
Navy Litigation Office

CERTIFICATE OF SERVICE

I hereby certify that, on the 8th day of July 2010, I will electronically file the foregoing

with the Clerk of Court using the CM/ECF system, which will then send a notification of

electronic filing (NEF) to the following filing user:

Lisa A. Bertini
Bertini, O'Donnell & Hammer. P.C.
999 Waterside Drive, Ste. 1010
Norfolk, VA  23510
lbertini@bohlaw.net

    /s/
Lawrence R. Leonard
Managing Assistant United States Attorney
Virginia State Bar No. 37995
Attorney for Defendant
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA  23510
757- 441-6331 Office
757-441-6689   Fax
lawrence.leonard@usdoj.gov

30