**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

-------------------------------------------------------------------------X
**RALPH E. PRICE, on behalf of himself and**
**all others similarly situated,**                          **Civil Action No. 2:10-cv-216**

                **Plaintiff,**

        **vs.**

**ROBERT GATES, SECRETARY OF DEFENSE,**
**in his individual and official capacities, THE UNITED**
**STATES DEPARTMENT OF DEFENSE, and**
**THE UNITED STATES OF AMERICA,**

                **Defendants.**
-------------------------------------------------------------------------X

**PLAINTIFF'S OPPOSITION IN RESPONSE TO DEFENDANTS'**
**MOTION TO DISMISS CLASS ACTION COMPLAINT**

**BERTINI O'DONNELL & HAMMER, PC**
**999 Waterside Drive, Suite 1010**
**Norfolk, Virginia 23510**
**(757) 670-3868**

**MEISELMAN, DENLEA, PACKMAN,**
**CARTON & EBERZ P.C.**
**1311 Mamaroneck Avenue**
**White Plains, New York 10605**
**(914) 517-5000**
**Attorneys for Plaintiff**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

FACTS .................................................................................................................................2

    A.    The Implementation of NSPS ...............................................................2

    B.    DOD Does Not Abide By Its Own Regulations Or The Statutory Authority
            Governing NSPS Performance – Based Bonuses .....................................4

    C.    Plaintiff Was Denied His NSPS Performance Based Payout .................5

LEGAL STANDARD.............................................................................................................6

ARGUMENT .........................................................................................................................7

I.      THE COURT HAS SUBJECT MATTER JURISDICTION ...............................................7

    A.    This Court Has Jurisdiction To Review An Agency Decision
            Pursuant To 28 U.S.C. § 1331 ...............................................................7

    B.    This Court Has Jurisdiction To Hear A Mandamus Claim Pursuant
            To The Mandamus Statute ......................................................................7

    C.    This Court Has Jurisdiction To Hear Claims For Money
            Under The Little Tucker Act....................................................................8
            i.     The Little Tucker Act Confers Jurisdiction .................................8

            ii.    No Money Mandating Statute Is Necessary
                  Because Defendants Improperly Retained Money
                  Due To Plaintiffs...........................................................................9

            iii.   Even if a "Money Mandating" Law Were Necessary,
                  Such Laws Are Present Here ......................................................10

    D.    The Department of Defense Is A Proper Party Defendant ...................10

II.    PLAINTIFF HAS STATED A CLAIM UNDER EACH
      OF HIS CAUSES OF ACTION ...................................................................11

    A.    Plaintiff Has Stated A Claim For Declaratory Relief Pursuant To
            The Administrative Procedure Act. ......................................................11

i

## TABLE OF CONTENTS

**Page**

    B.      Plaintiff Has Stated A Claim For Mandamus ........................................................15

    C.      Plaintiff Has Stated A Claim Under The Back Pay Act ........................................16

    D.      Plaintiff Has Stated A Claim For Violation of the Fifth Amendment ...................17

CONCLUSION.....................................................................................................................19

# TABLE OF AUTHORITIES

**Page**

<u>**Cases**</u>

*Adams v. Bain,*
   697 F.2d 1213 (4th Cir. 1982) ................................................. 6

*Adams v. United States,*
   391 F.3d 1212 (Fed. Cir. 2004).............................................. 18

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)............................................................. 6

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotic*s,
   403 U.S. 388 (1971)....................................................... 18, 19

*Brown v. United States,*
   86 F.3d 1554 (Fed. Cir. 1996)........................................... 9, 10

*Califano v. Sanders,*
   430 U.S. 99 (1977)............................................................. 7

*Glover v. Johns-Manville Corp.,*
   662 F.2d 225 (4th Cir. 1981) ................................................ 8

*Goldberg v. Kelly*,
   397 U.S. 254 (1970)........................................................... 17

*In re Medicare Reimbursement Litig.,*
   414 F.3d 7 (D.C.Cir. 2005) ............................................. 15, 16

*Kearns v. United States,*
   585 F.3d 187 (4th Cir. 2009) ................................................ 6

*March v. United States,*
   506 F.2d 1306 n.1 (D.C. Cir. 1974) ....................................... 8

*Mills v. U.S. Postal Serv*.,
   977 F. Supp. 116 n.6 (D.R.I. 1997)........................................ 9

# TABLE OF AUTHORITIES

**Page**

<u>**Cases**</u>

*Morrison v. National Australia Bank*,
   --- S.Ct. ----, 2010 WL 2518523 (June 24, 2010) ...................................................... 8

*Pollard v. Geo Group, Inc.*,
   607 F.3d 583 (9th Cir. 2010) ................................................................................. 19

*Reno v. Catholic Social Services*,
   509 U.S. 43 (1993) .................................................................................................. 7

*Richey v. United States*,
   322 F.3d 1317 (Fed. Cir. 2003) ............................................................................ 14

*Sigmon Coal Co. v. Apfel*,
   226 F.3d 291 (4th Cir. 2000) ................................................................................. 7

*Toney v. Burris*,
   829 F.2d 622 (7th Cir. 1987) ............................................................................... 17

*U.S. v. Testan*,
   424 U.S. 392 (1976) ........................................................................................... 9, 10

*United Government Security Officers of America v. Chertoff*,
   587 F.Supp.2d 209 (D.D.C. 2008) .................................................................. 15, 16

*Wilkie v. Robbins*,
   551 U.S. 537 (2007) .............................................................................................. 19

*Williams v. United States*,
   86 Fed.Cl. 594 (Fed. Cl. 2009) ............................................................................ 18

<u>**Statutes**</u>

15 U.S.C. § 78j(b) ......................................................................................................... 8

28 U.S.C. § 1331 ........................................................................................................... 7

28 U.S.C. § 1346 ........................................................................................................... 8

28 U.S.C. § 1346(a)(2) ................................................................................................. 8

iv

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>Statutes</u>

28 U.S.C. § 1361 ................................................................................................ 7, 8, 15

5 U.S.C. § 9902 ................................................................................................... 12, 13

5 U.S.C.A. § 703 ........................................................................................................ 10

5 U.S.C.A. §§ 701(a), 702 ........................................................................................ 11

5 U.S.C.A. §5596(b) ................................................................................................. 16


## <u>Rules</u>

Federal Rule of Civil Procedure 12(b)(1) ............................................................. 6, 11

Rule 12(b)(6) ......................................................................................................... 6, 8, 11

## <u>Regulations</u>

5 C.F.R. § 9901.342 ................................................................................................... 12

5 C.F.R. § 9901.342(c) .............................................................................................. 12

5 C.F.R. § 9901.342(d)(2) ......................................................................................... 12

5 CFR § 9901.342(g)(6) (2008) ............................................................................... 15

5 CFR §9901.342(a) ............................................................................................ 12, 15

5 CFR §9901.342(f) ................................................................................................... 12

5 CFR §9901.411 ...................................................................................................... 13

5 CFR 9901.103 ........................................................................................................ 15

**INTRODUCTION**

This class action seeks payment of earned wages in the form of "performance payouts" to employees who previously worked for the United States Department of Defense ("DOD") and who have had their earned bonuses improperly withheld from them.

The National Security Personnel System ("NSPS"), a system within the DOD, was created to replace the longevity-based pay grade system with a merit-based pay system for civilian DOD employees.[1]  The performance-based wage payments are from a pool of money created at least in part through the designation by the Secretary of Defense of a percentage of all the civilian employees' annual pay increases.  Thus, the contributions are made by the very employees who are eligible to receive the salary increases and bonuses.  That same money is then paid out to employees in proportion to their performance.

The NSPS pay system results in a distribution each year to employees of performance-based: (a) pay increases; and/or (b) "bonus" compensation.  The amounts to be paid to employees depend on a rating of record assigned to each employee, based on performance and contribution.

An employee's performance appraisal year is based on the government's fiscal year, which begins on October 1st and ends September 30th (365 days).  At the end of that fiscal year, the employees are each reviewed and rated, and a determination is made as to whether they are entitled to a salary increase and/or bonus or not; and if so, the number of shares of the performance-based pay pool they will receive.

DOD has wrongfully denied compensation to departing employees who have contributed to and earned these performance-based bonuses on the basis of technical departure timing issues

---

[1] All facts set forth herein are as alleged in the Complaint.

1

that do not find support in the regulations, the statutory authority for such regulations, or the United States Constitution.

DOD has denied employees these payouts even if they leave work in January of the following year, 90+ days after the bonuses have been fully earned, and, even if, as in Plaintiff's case, they leave work just one day before the first day of the first pay period of the following year.  This arbitrary treatment of bonus payments to departing employees violates the letter and the spirit of the regulations.

As a result, there are tens of thousands of DOD civilian employees who, after working the full NSPS performance period, and after contributing a large percentage of their performance based salary increase to the NSPS payout pool, leave DOD after the end of the government's fiscal year (September 30th of each year) but before the NSPS-designated effective date for salary increases, which is always in the first week of January of the year following the NSPS performance period, and, therefore, are barred from receiving their earned bonuses.

## FACTS

### A.    The Implementation of NSPS.

The National Defense Authorization Act for Fiscal Year 2004, Pub. L. 108-136, 117 Stat. 1392 (2003) ("the NDAA"), became law on November 24, 2003 (Complaint, ¶17.)  This statute provided the Secretary of Defense the authority to establish a flexible and contemporary civilian personnel system called the National Security Personnel System, or the NSPS, a human resources management system for DOD.  (*Id.*)

The NDAA as passed in 2003 required the NSPS to include a "fair, credible and transparent employee performance appraisal system," "effective safeguards to ensure that the management of the system is fair and equitable and based on employee performance," and "a

pay-for-performance evaluation system to better link individual pay to performance, and provide an equitable method for appraising and compensating employees." (Complaint, ¶18.)

The NSPS system is thus designed to provide performance-based pay and salary increases that allow employees to be paid and rewarded based on performance and results, rather than based solely on longevity, as had previously been the case. The system provides a pay-banding structure to replace the General Schedule, and should result in a distribution of available performance-based pay funds based upon individual performance, individual contribution, team or organizational performance, or a combination of those elements. (Complaint, ¶20.) The NSPS pay system uses a pay pool concept to manage, control and distribute performance-based pay increases and bonuses. (*Id*.)

In each NSPS performance year, (*e.g.*, October 1st to September 30th of each year) every NSPS employee is given a rating of record between 1 and 5 (5 being the highest) and is awarded a number of shares by the NSPS pay panel. (Complaint, ¶21.) Those receiving a one or two rating receive no shares; a three rating receives one or two shares; a four rating gets three or four shares; and a five receives five or six shares. (*Id*.) The performance payout is a function of the amount of money in the performance pay pool and the number of shares assigned to each individual employee. (*Id*.)

The rating of record used as the basis for a performance payout of increase in base salary and/or bonus, is the one assigned for the most recently completed appraisal period. (Complaint, ¶22.) Pay pools and pay pool oversight are established and managed each year in accordance with implementing issuances published by the Secretary of Defense. (*Id*.) The Secretary determines a percentage of each civil service employee's annual government-wide general pay increase to be included in the pay pools and paid out as (i) a performance-based pay increase;

(ii) a performance-based bonus; or (iii) a combination of the two.[2]   (*Id.*)  For example, in 2008 the Secretary of Defense exercised his authority to designate that 40% of the percent pay increase for DOD NSPS civil personnel be reserved for the pay pool distribution fund.  (*Id.*)  The remaining 60% was given to the employees as their annual pay increase.  (*Id.*)

Stated differently, a percentage of each NSPS employee's annual cost of living increase is used to fund the NSPS pay pool, along with any added funds allocated by Congress. (Complaint, ¶23.)

### B.   DOD Does Not Abide By Its Own Regulations Or The Statutory Authority Governing NSPS Performance-Based Bonuses.

An employee's performance-based NSPS payout is calculated by multiplying the employee's base salary as of the end of the NSPS performance period by the number of shares earned by the employee times the share value.  (Complaint, ¶24.)

An NSPS performance payout may be an increase in base salary, a bonus or a combination of the two.  (Complaint, ¶25.)  When an employee's base salary is not increased because the employee's base salary has reached the maximum of the pay band, any remaining performance payout is paid as a bonus in lieu of the increase in base salary.  (*Id.*)

There is no basis in the regulations for DOD's arbitrary application of the January "effective date" to NSPS bonuses, which should be paid so long as the employee completes the fiscal (performance) year, regardless of the employee's departure date.  (Complaint, ¶27.)  On the contrary, as set forth herein, applicable federal law requires payment of the earned bonus.

---

[2] In addition to employee contributions from salary increases, Congress also allocates funds to the pay pool.

4

**C.     Plaintiff Was Denied His NSPS Performance Based Payout.**

Plaintiff was a DOD civilian employee for 36 years, who retired in 2007 but was re-hired as a so-called "annuitant" for a finite, 2-year period, so he could continue some important work for DOD.  (Complaint, ¶28.)  In the documentation requesting Plaintiff's re-employment, his superiors explained that Plaintiff was essentially indispensible to DOD.  (*Id.*)  In the DOD's own words:

> Mr. Price has more than 34 years working for USJFCOM.  His personal understanding and corporate knowledge of all the aspects of the USJFCOM IT enterprise and information security implementations cannot be replaced. In addition to the traditional IT capabilities, we would like to point out that many of these networks and systems have highly specialized communications, computers, and information security requirements due to the complex nature of the work performed by the customers supported by these networks.  Mr. Price is the senior J6 member on the USJFCOM IT investmentboard, USJFCOM Industry Technology Transfer board and Cooperative Research and Development Agreement panel, all of which are significant organizations that prioritize $33M in IT investments, advance insertion of industry knowledge-base, concepts, and technology that best support the USJFCOM Commander's goals

(*Id.*)

Plaintiff left DOD permanently on January 3, 2009, exactly 2 years after the extension of his employment as an annuitant.  (Complaint, ¶29.)  Under the written terms of his re-employment, Plaintiff was not entitled to work on January 4, 2009 because his extended annuitant term expired on January 3, 2009.  (*Id.*)  The NSPS payout date for salary increases from the previous NSPS performance period -- 2007-2008 -- was January 4, 2009, the first day of the first pay period of the new year.  (*Id.*)  Because Plaintiff had to leave work the prior day, and because DOD fails to follow the regulations, and does not live up to its promise to safeguard uniform treatment of payment of bonuses to departing employees who have earned them, Plaintiff was not awarded his NSPS bonus, even though he worked the whole 365 days of the

NSPS performance period -- and earned his highest ever NSPS rating – a 4 of 5 -- and was awarded the greatest bonus amount of his career from the NSPS pay pool panel.  (*Id.*)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) permits a party to challenge subject matter jurisdiction.  Absent a defendant's submission of evidence through affidavits, a Rule 12(b)(1) motion is governed by the same rules as a Rule 12(b)(6) motion -- the facts alleged in the complaint must be assumed to be true.  *Kearns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009), *citing Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).  The motion to dismiss "must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction."  *Id.*  In this case, no evidence was submitted through affidavits,[3] and Defendants purport to make a "facial challenge" to this Court's jurisdiction. (Defs.' Jt. Mem. at 9.)  Therefore, the Court should assume the allegations in the Complaint are true and should deny the Motion to Dismiss.  *See id.*

Federal Rule of Civil Procedure 12(b)(6) permits a party to test the legal sufficiency of a complaint.  A complaint should contain a short plain statement of the claim that gives the defendant fair notice of what the claim is and the grounds upon which it rests.  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  In ruling on a Rule 12(b)(6) motion, the Court should assume all facts pled in the Complaint are true, and based thereon should determine whether the plaintiff has stated a "plausible" claim for relief.  *Id.*  In this case, for the reasons set forth herein, Plaintiff has met and exceeded this standard as to each of his causes of action.

---

[3] The submission of Department of Defense Instructions merely by attaching them to the brief does not constitute the submission of affidavits.

## ARGUMENT

I.    **THE COURT HAS SUBJECT MATTER JURISDICTION.**

A.    **This Court Has Jurisdiction To Review An Agency Decision Pursuant To 28 U.S.C. § 1331.**

Federal agency actions "are generally reviewable under federal question jurisdiction, pursuant to 28 U.S.C. § 1331." *Califano v. Sanders*, 430 U.S. 99, 106-07 (1977); *see also Sigmon Coal Co. v. Apfel*, 226 F.3d 291 (4th Cir. 2000).  Even if no statute provides that the agency's actions are subject to review, courts "customarily refuse to treat such silence as a denial of authority to an aggrieved person to seek appropriate relief in the federal courts." *Reno v. Catholic Social Services*, 509 U.S. 43 (1993) (internal quotations and citations omitted).  "This custom has been reinforced by the enactment of the Administrative Procedure Act, which embodies the basic presumption of judicial review to one suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." *Id.* (internal quotations and citations omitted.)

In this case, Plaintiff seeks review of an agency determination under each cause of action. The Court therefore has subject matter jurisdiction over each claim pursuant to 28 U.S.C. § 1331. *See Califano*, 430 U.S. at 106-07.

B.    **This Court Has Jurisdiction To Hear a Mandamus Claim Pursuant to The Mandamus Statute.**

The Mandamus Act, 28 U.S.C. § 1361 provides, "The District courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  In this case, Plaintiff has pled a claim for mandamus, and has asserted this jurisdictional provision. *See* Complaint, Second Cause of Action, ¶43; *see also* Section IIB, *infra*.  Accordingly, this Court

has jurisdiction to hear Plaintiff's Second Cause of Action for mandamus pursuant to 28 U.S.C. § 1361.

### C.   This Court Has Jurisdiction To Hear Claims For Money Under the Little Tucker Act.

#### i.   The Little Tucker Act Confers Jurisdiction.

This Court has subject matter jurisdiction over Plaintiff's money claims under the Little Tucker Act, 28 U.S.C. § 1346.   The Little Tucker Act provides that district courts shall have concurrent original jurisdiction of any civil action or claim against the United States not exceeding $10,000, founded upon any federal law or contract with the United States, or for damages, in cases not sounding in tort.  28 U.S.C. § 1346(a)(2).  In a class action, such as this one, claims of individual class members are not aggregated.  *See March v. United States*, 506 F.2d 1306, 1309 n.1 (D.C. Cir. 1974); *Glover v. Johns-Manville Corp.*, 662 F.2d 225 (4th Cir. 1981).  In this case, Plaintiff seeks money damages from the United States in an amount not exceeding $10,000.  Accordingly, this Court has subject matter jurisdiction for Plaintiff's claims for money.

Although Defendants devote numerous pages to arguing that there is no subject matter jurisdiction under the Little Tucker Act, Defendants mix jurisdictional issues with merits issues.[4]

---

[4] The Supreme Court recently emphasized that a defendant's challenge to the merits of a claim is not jurisdictional in nature.  In *Morrison v. National Australia Bank*, --- S.Ct. ----, 2010 WL 2518523, at *4 (June 24, 2010), the Court considered whether the anti-fraud provisions of federal securities laws applied to certain foreign conduct.  In numerous cases, the Courts of Appeals had analyzed the question as one of subject-matter jurisdiction, but the Supreme Court clarified that it was a merits inquiry, to be analyzed under Rule 12(b)(6).  As the Court explained, "Subject-matter jurisdiction, by contrast, refers to a tribunal's power to hear a case."  *Id.* (internal citations and quotation marks omitted).  There was no question that federal courts had the power to hear cases, like *Morrison*, alleging fraud under Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b).  For the same reason, there is no question that federal courts have subject-matter jurisdiction over the class of claims asserted here, including claims arising under the Mandamus Statute, Administrative Procedure Act, Back and Fifth Amendment.

The very cases that Defendants rely upon to argue that the Little Tucker Act does not confer jurisdiction in fact support Plaintiff's assertion that it *does* confer jurisdiction.  *See*, *e.g., U.S. v. Testan*, 424 U.S. 392, 398 (1976) (commenting that the Tucker Act is a "jurisdictional statute"); *Brown v. United States*, 86 F.3d 1554, 1559 (Fed. Cir. 1996) (reversing dismissal based on subject matter jurisdiction, and also finding Tucker Act is a "jurisdictional statute"); *Mills v. U.S. Postal Serv.*, 977 F. Supp. 116, 121 n.6 (D.R.I. 1997) (noting that Little Tucker Act confers jurisdiction on claims not exceeding $10,000).

     ii.    <u>No Money Mandating Statute Is Necessary Because Defendants<br>Improperly Retained Money Due To Plaintiffs</u>.

To the extent that Defendants claim only that the Little Tucker Act fails to confer jurisdiction because Plaintiff has failed to plead a "money mandating statute," Defendants are incorrect.  As the very cases Defendants rely upon establish, a money mandating statute is not required to confer jurisdiction under the Little Tucker Act where the defendant improperly retains money due to the plaintiff.  *See Testan*, 424 U.S. at 401-02 (money mandating statute required only where "plaintiff is not suing for money improperly exacted or retained").  Thus, the Supreme Court recognizes that the United States cannot hold money belonging to a plaintiff and refuse to pay it when due.  Indeed, to require an employee to point to a law that states "the government shall pay what it owes" would be absurd.

Here, Plaintiff's complaint alleges that Defendants have improperly "retained" money owed to Plaintiff.  (*See*, *e.g.*, Complaint, ¶¶ 7, 8, 12.)  The money due to Plaintiff was not a discretionary bonus as one would see in a private company, but rather part of a pay system, which recognized merit pursuant to a carefully constructed ratings system.  Plaintiff earned his rating, was advised of what his rating was, and the amount of pay he was entitled to receive as a result of that rating.  (*See* Complaint, ¶ 33.)  Plaintiff earned his performance-based payout, but

Defendants failed to pay this fully vested amount to Plaintiff.  (*See generally* Complaint, ¶¶ 7-12, 20-33; *see also* Section IIA, *infra*.)  Thus, Defendants improperly retained money due to Plaintiff, and no money mandating law is necessary for Plaintiff to prevail.  *See Testan*, 424 U.S. at 401-402.

iii.    <u>Even if a "Money Mandating" Law Were Necessary, Such Laws Are Present Here</u>.

Even if a "money mandating" law were necessary in this matter, which it is not for the reasons set forth in Subsection I.C(ii), *supra*, money mandating laws exist here.  Again, the very cases Defendants rely upon <u>support</u> Plaintiff's entitlement to a recovery.  In *Brown v. U.S.*, cited by Defendants, the Court of Appeals reversed a District Court's dismissal based on lack of subject matter jurisdiction, and emphasized that where a money mandating law is required, the "source of substantive law may grant the right to recovery either 'expressly or by implication.'" *Brown*, 86 F.3d at 1559.  Here, there is both an express and implied right to receive the earned wages due to Plaintiff, and each of Defendants' arguments to the contrary fail, for the reasons set forth in Section IIA, *infra*.

**D.**    **The Department Of Defense Is A Proper Party Defendant.**

Defendants incorrectly argue that the Department of Defense may not be sued in federal court.  Pursuant to 5 U.S.C.A. § 703, where no special statutory review proceeding is applicable, an action for judicial review of an agency decision may be brought against (A) the United States, (B) the agency by its official title, or (C) the appropriate officer.  Accordingly, Plaintiff is entitled to bring this action against the United States, the Department of Defense, Defendant Gates, or any combination thereof.

**II.     PLAINTIFF HAS STATED A CLAIM UNDER EACH OF HIS CAUSES OF ACTION.**

**A.     Plaintiff Has Stated A Claim For Declaratory Relief Pursuant To The Administrative Procedure Act.**

Defendants have not addressed Plaintiff's First Cause of Action for Declaratory Relief pursuant to the Administrative Procedure Act in their Rule 12(b)(6) Motion to Dismiss.  In fact, Defendants incorrectly claim that Plaintiff <u>could</u> seek relief under the Administrative Procedure Act, but has failed to do so.  (Pls.' Jt. Mem. at 18).  Defendants are clearly mistaken, as Plaintiff's First Cause of Action is entitled, "Declaratory Relief pursuant to the Administrative Procedures Act."  Defendants do include a discussion of this cause of action under the portion of their brief addressing their Rule 12(b)(1) challenge.  Therefore, in an abundance of caution, Plaintiff addresses his claim here.

First, subject matter jurisdiction exists for the First Cause of Action for the reasons set forth in Section I, *supra*.

Second, the Administrative Procedure Act waives sovereign immunity as to equitable relief, and creates a separate right of action for judicial review of any agency action causing a person to suffer a legal wrong, unless a statute precludes judicial review of it, or the action reviewed is discretionary.  5 U.S.C.A. §§ 701(a), 702.  Here, Plaintiff challenges an agency action causing him to suffer a legal wrong -- loss of earned wages.  The action reviewed is payment of an earned and vested "performance payout."  This action is not discretionary, but is mandatory.

11

During the time Plaintiff was employed at the DOD, the NDAA required payment based on the NSPS "pay for performance" system.  5 U.S.C. § 9902; *see also* 5 C.F.R. § 9901.342.[5] The system was <u>required</u> to link employee bonuses to performance appraisals of employees. 5 U.S.C. § 9902.  Under the system, employees were awarded ratings, and the Secretary of Defense was required to assign the number of "shares" to be assigned to each rating level. 5 C.F.R. § 9901.342(c).  Performance shares are then <u>required</u> to be used to determine performance pay increases and/or bonuses under the pay for performance system.  *Id*.  Once the rating is assigned, and the number of "shares" to be awarded for each rating, a specific formula <u>must</u> be followed in determining the performance payout.  "To determine an individual employee's performance payout, the share value…<u>will be</u> multiplied by the number of performance shares assigned to the employee."  5 C.F.R. § 9901.342(d)(2) (2006 Regulations)[6] (emphasis added).  The performance payout is an increase in basic pay, a bonus, or a combination of the two.  *Id*.  The Regulations provide that this system <u>will</u> result in a "distribution of available performance pay funds" based on performance.  5 CFR §9901.342(a); *see also* Complaint ¶45.  The NDAA and its regulations thus require Defendant Gates to implement payment for employees based on their ratings and resulting shares.  No regulations permit Defendants, once performance shares are established, and the calculation between pay increase and bonus is established, to disregard performance shares and determine that the amount of the performance payout will be withheld or otherwise treated as a nullity.

---

[5] As noted by Defendants, there are two sets of regulations at issue here.  The first set of regulations was effective January 1, 2006.  The relevant section relating to performance payouts from the 2006 regulations is attached hereto as Exhibit 1, 5 CFR 9901.342.  This regulation was later revised in 2008, and several additional regulations were added.  This new set of regulations was effective November 25, 2008.  Under either set of regulations, Plaintiff prevails.

[6] The 2008 regulations provide that "Performance shares" are required to be used to determine bonuses. 5 CFR §9901.342(f).

Moreover, regardless of any interpretation of the applicable regulations, Defendants owed

Plaintiff and the Class a clear, nondiscretionary duty to implement a compensation system that

was fair and equitable, and based on employee performance, pursuant to 5 U.S.C. § 9902.  The

policy of refusing to pay employees their performance payouts, which they fully earned prior to

their departure, is neither fair nor equitable, nor based on employee performance.

Defendants' argument that 5 CFR §9901.411 established an "effective date of ratings of

record" fails.[7]   Section 9901.411 does not eliminate an employee's right to receive an earned

bonus.  Once the appraisal period is completed, the most cogent reading of the Regulations is

that the right to a rating and earned bonus is vested, regardless of when the rating becomes

"effective."  Moreover, it should be noted that Plaintiff was still employed with Defendants on

January 1, 2009 (and did not leave until January 3, 2009), yet Defendants still did not pay

Plaintiff his performance payout bonus.  (*See* Complaint, ¶32.)  Thus, it is disingenuous for

Defendants to claim that this case turns on a regulation setting a ratings effective date as of

January 1.

Moreover, Defendants' arguments that Plaintiffs' performance bonus was not earned is

disingenuous for the additional reason that Defendants advised Plaintiff of the payout due to him

for the 2007-2008 period ($4,777).  (Complaint, ¶33.)  To argue that this payout, arrived at

through a specific formulaic calculation, and earned during the 2007-2008 appraisal period, may

be retained by Defendants after it was earned and awarded, is simply not logical.  Though it is

natural and sensible for salary increases to be made payable at the beginning of the first pay

period of the following year, as the 2008 regulations provide, there is no basis in the regulations

---

[7] It should be noted that Section 9901.411 did not exist until the 2008 regulations were issued, and Plaintiff's rating was issued to him prior to the effective date of the new regulations. However, Plaintiff prevails under either set of regulations.

or in common sense for the earned bonuses to be payable only if the employee remains on the job until the beginning of the first pay period of the following year.  In misapplying the regulations in that manner, DOD is violating the statutory authority allowing for the creation of the NSPS system, the Constitution of the United States, and the regulations themselves, and is unjustly enriching itself at the expense of its employees, who contributed money to fund the NSPS pay pool through having a portion of their annual salary adjustments contributed to the pay pool.  (Complaint, ¶¶24, 25.)[8]

Defendants' reliance on Department of Defense Instructions is also unavailing.  To the extent such internal instructions contradict federal statutes, the federal statute "trumps" agency instructions.  *Richey v. United States*, 322 F.3d 1317, 1327 (Fed. Cir. 2003).  Similarly, rules published in the Federal Register after undergoing proper rulemaking procedures should trump DOD Instructions, which are issued pursuant to such federal regulations.  Thus, even if the DOD Instructions were counter to Plaintiff's claims, they would not control.

Moreover, the Instructions do not defeat Plaintiffs' claim, even if they trumped federal statutes and regulations.  Defendants rely throughout their brief primarily on two DOD Instructions.  Neither is dispositive of this case.

First, Defendants incorrectly rely upon DoD 1400.25-M, Subchapter 1930.9.4.5 (April 28, 2006).  This Instruction states in relevant part, "Employees who are no longer covered by NSPS at the time of payout are not entitled to a performance-based payout."  This instruction does not aid in the analysis of this case because it begs the questions of (a) whether an employee is "covered by NSPS" if he is still owed pay for work performed while working for the Department of Justice, (b) whether the term "payout" refers to actual transfer of money or

---

[8] Defendants dispute that money due to employees was deposited in the pay pool fund.  Plaintiffs anticipate conducting discovery on this issue.

14

instead refers to the issuance of a calculated bonus amount based on the employee's rating

(which is required to be done at the conclusion of the rating period, *see* 5 CFR 9901.103,

defining "rating of record") and (c) if the term "payout" means transfer of money, whether the

Department of Justice may evade the federal regulations, which are required to link bonuses to

ratings, by simply delaying "payout" to the following year.

Second, Defendants incorrectly rely upon DOD 1400.25-M, Subchapter 1930.9.4

(April 28, 2006).  That instruction provides that "[p]erformance-based payouts shall be effective

the first day of the first pay period beginning on or after January 1 of each year."  Again, a DOD

instruction cannot trump a regulation that provides that the compensation system must result in a

"distribution of available performance pay funds" based on performance, 5 CFR §9901.342(a).

It is also significant that when the regulations were amended in 2008, only the pay increase in

base salary, and not the bonus, had an effective date in the year following the appraisal period.

5 CFR § 9901.342(g)(6) (2008).  Thus, once proper major rule making procedures were

followed, the proper result was reached—pay increases became effective in January if the

employee was still present, but the proper interpretation of the regulation is that bonuses were

payable if the appraisal period was completed.

### B.      Plaintiff Has Stated A Claim For Mandamus.

Under the Mandamus Act, a district court may compel an officer of the United States or

any agency thereof to perform a duty owed to the plaintiff.  28 U.S.C. § 1361; *United

Government Security Officers of America v. Chertoff*, 587 F.Supp.2d 209, 216 (D.D.C. 2008)

(holding mandamus appropriate to compel agency to issue new wage determination to increase

employees' wages and fringe benefits), *citing In re Medicare Reimbursement Litig.*, 414 F.3d 7,

10 (D.C.Cir. 2005).  Though mandamus is an extraordinary remedy, "the showing necessary to

obtain mandamus is not inherently preclusive." *Chertoff*, 587 F.Supp.2d at 216.  Mandamus is appropriate where "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff."  *Id.*, *quoting In re Medicare Reimbursement Litig.*, 414 F.3d at 10.  In this case, Plaintiff has a clear right to relief, and Defendant Gates had a clear duty to act, for the reasons set forth in Section IIA, *supra.*[9]

> ### C.     Plaintiff Has Stated A Claim Under The Back Pay Act.

The Back Pay Act provides in part that an employee of an agency who is found by appropriate authority under applicable law or regulations to have been affected by an unjustified or unwarranted personnel action which has resulted in the reduction of all or part of the pay, allowance, or differentials of the employee is entitled, on correction of the personnel action, to receive the amount he would have received absent the personnel action, attorneys' fees, and interest.  5 U.S.C.A. §5596(b).

A ruling as to the First and Second Causes of Action in Plaintiff's favor will constitute a finding that Plaintiff and the Class have been affected by an unjustified or unwarranted personnel action.  Moreover, the decision to refuse to pay performance-based bonuses for work performed, after the work had already been performed, was an unjustified and unwarranted personnel action resulting in the reduction of pay, allowance or differentials to which Plaintiff is entitled. Accordingly, Plaintiff has stated a claim under the Back Pay Act.

---

[9] Defendants also claim that a writ of mandamus is unavailable because other means of redress are available but were not pursued by Plaintiff.  As demonstrated above, this is factually incorrect, as Plaintiff seeks a declaration of his rights (and those of the Class) under the Administrative Procedure Act.  To the extent that the Court grants full redress to Plaintiff and the Class under another claim alleged in the complaint, issuance of a writ of mandamus may prove to be unnecessary – but Plaintiff's Mandamus Act claim is well pleaded and not subject to dismissal at this early stage.

Defendants incorrectly argue that the "bonus" portion of the performance payout was "discretionary" and therefore cannot constitute "pay."  In doing so, Defendants attempt to revise the Back Pay Act to insert the word, "Basic." The Back Pay Act does not address the improper reduction of all "Basic Pay" to which an employee is entitled, but rather creates a cause of action for the reduction of "pay" to which the employee is entitled.  The performance payout mandated by the NDAA and the federal regulations is "pay."  Moreover, the performance payout is not "discretionary" for the reasons set forth in Section IIA, *supra*.

> **D.    Plaintiff Has Stated A Claim For Violation of the Fifth Amendment.**

The Fifth Amendment of the United States Constitution prohibits the taking of property without due process of law.  When the government deprives a person of money to which he is statutorily entitled, the Fifth Amendment is violated.  *See*, *e.g., Goldberg v. Kelly*, 397 U.S. 254, 262 (1970) (finding termination of welfare benefits without due process violates Constitution just as the withdrawal of unemployment compensation, "denial of tax exemption," or "discharge from public employment"); *see also Toney v. Burris*, 829 F.2d 622 (7th Cir. 1987) (employee had property interest protected by due process clause in wages withheld by government).

In this case, Defendants Gates in his individual and official capacities, the United States of America, and the Department of Defense refused payment for work completed by Plaintiff and the Class without due process.  Plaintiff was entitled to receive payment for his services, as set forth in Section IIA, *supra*.  Defendants failed to make such payments, nor did they follow proper procedures to establish formal regulations withdrawing the rights of Plaintiff and the Class to their earned bonuses.  Therefore, Plaintiff has stated a claim under the Fifth Amendment.

17

Defendants claim that Secretary Gates may not be sued in his individual capacity because Plaintiff did not allege personal conduct on the part of Secretary Gates.  Defendant Gates is sued in his individual capacity pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  Plaintiff has properly pled under *Bivens* that Secretary Gates is a federal official who is charged with ensuring that supervisors and employees understand the NSPS and function effectively within it.  (Complaint, ¶17.)  Plaintiff has also alleged that Secretary Gates failed to follow proper procedures to establish formal regulations withdrawing the rights of Plaintiff and the Class to their earned bonuses, (Complaint, ¶51), and that he refused to pay Plaintiff and the Class amounts owed to them, (Complaint, ¶52).   Such allegations are sufficient to state a *Bivens* claim.  *See Bivens*, 403 U.S. at 396; *see generally Burris*, *supra* (Comptroller of the State of Illinois sued in his individual and official capacity for withholding employee wages).

Defendants also incorrectly claim that a *Bivens* remedy has only been found in cases where there was a violation of the Fifth Amendment in the context of employment discrimination.  But Defendants cite no case suggesting that *Bivens* applies to violations of the Fifth Amendment in one context and not another.  Moreover, neither of the cases relied upon by Defendants involve a situation such as this one, where payment is mandated by federal law.  *See Adams v. United States*, 391 F.3d 1212, 1219 (Fed. Cir. 2004) (Congress amended statute to reduce limitations period for claims from six to two years); *Williams v. United States*, 86 Fed.Cl. 594, 604-05 (Fed. Cl. 2009) (elimination of accrued leave was by operation of a statute).  Rather, both cases involved situations where laws were changed to eliminate entitlement to money.  (*Id*.)  That is not the case here.  In this case, the current federal regulations only reinforce the rule that performance-based payouts are mandatory, for the reasons set forth in

18

Section IIA, *supra*.  Finally, Defendants' discussion of a possible "extension" of *Bivens* is

inapposite, as Defendants themselves concede that the Supreme Court has applied *Bivens* to

claims arising under the Fifth Amendment.  (Defs.' Jt. Mem. at 26.)  Thus, there is no need to

"extend" *Bivens* to hear the instant Fifth Amendment claim.[10]

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court should deny

Defendants' Motion to Dismiss, together with such other and further relief as the Court deems

just and appropriate.

Dated: July 22, 2010                          Respectfully submitted,


                                     _____/s/_____
                                     Lisa A. Bertini (VSB #29660)
                                     Hyojin Bae (VSB #76479)
                                     BERTINI O'DONNELL & HAMMER, PC
                                     999 Waterside Drive, Suite 1010
                                     Norfolk, Virginia 23510
                                     (757) 670-3868 Telephone
                                     (757) 670-3865 Facsimile
                                     lbertini@bohlaw.net
                                     hbae@bohlaw.net

                                     David J. Meiselman, Esq.
                                     Jeffrey I. Carton, Esq.
                                     Jerome Noll, Esq.
                                     MEISELMAN, DENLEA, PACKMAN,
                                     CARTON & EBERZ P.C.
                                     1311 Mamaroneck Avenue
                                     White Plains, New York 10605
                                     (914) 517-5000
00232216.docx                        *Attorneys for Plaintiff*

---

[10] Defendants also mis-state the standard for "extending" *Bivens*, relying on the Fourth Circuit's three-part test rather than the Supreme Court's more recent and superseding two-part analysis. *See Pollard v. Geo Group, Inc.*, 607 F.3d 583 (9th Cir. 2010) (citing Supreme Court's "two-part test" in *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)).  Under *Wilkie*, the Fifth Amendment interests at issue here require a federal judicial remedy, and there are no special circumstances counseling hesitation.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 22nd day of July, 2010, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Lawrence R. Leonard (VSB #37995)
Managing Assistant United States Attorney
United States Attorney Office
101 W. Main Street, Suite 8000
Norfolk, VA 23510
(757) 441-6331 Telephone
(757) 441-6689 Facsimile
lawrence.leonard@usdoj.gov

Attorney for Defendants


_____/s/_____

Lisa A. Bertini (VSB #29660)
Hyojin Bae (VSB #76479)
BERTINI O'DONNELL & HAMMER, PC
999 Waterside Drive, Suite 1010
Norfolk, Virginia 23510
(757) 670-3868 Telephone
(757) 670-3865 Facsimile
lbertini@bohlaw.net
hbae@bohlaw.net

David J. Meiselman, Esq.
Jeffrey I. Carton, Esq.
Jerome Noll, Esq.
MEISELMAN, DENLEA, PACKMAN,
CARTON & EBERZ P.C.
1311 Mamaroneck Avenue
White Plains, New York 10605
(914) 517-5000

Attorneys for Plaintiff